[Crim. No. 32145. Second Dist., Div. Five. Dec. 11, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MORRIS EMANUEL, JR., Defendant and Appellant.

**COUNSEL**

William C. Beverly, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Robert D. Breton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STEPHENS, J.—Defendant appeals on the ground that his motion to suppress evidence pursuant to Penal Code section 1538.5 was improperly denied.

A search warrant was issued for defendant's residence. He was arrested after officers found seven balloons containing heroin and three guns during their search for heroin and narcotic paraphernalia described in the warrant. Defendant originally pleaded not guilty to the charges of a three-count information as follows: Count I, unlawful possession of heroin in violation of Health and Safety Code section 11350; count II, possession of a concealable firearm by a duly convicted felon in violation of Penal Code section 12021, subdivision (a); and count III, unlawfully altering and removing the identification marks of a firearm in violation of Penal Code section 12090. Defendant's motions under Penal Code sections 995 and 1538.5 were denied. His petition for a writ of prohibition based on denial of his section 1538.5 motion was also denied. Defendant then pleaded guilty to count II. Proceedings were suspended and defendant was granted four years' probation on certain terms, including the conditions that he spend one year in county jail and pay a fine of $1,000. This appeal followed.

Both the facts and issues in this case center primarily around the search warrant. On February 10, 1977, Officer Sutton of the Long Beach Police Department, Narcotics Section, applied for a search warrant in Long Beach Municipal Court. Officer Sutton requested the warrant to search defendant's place of employment, a bar in Long Beach, and defendant's residence in the City of Lakewood, together with the vehicles and persons of defendant and his wife, for heroin and narcotics paraphernalia. The search warrant was issued by the magistrate that day; either day or nighttime service was authorized.

In his 22-page affidavit in support of the warrant, Officer Sutton traced his 4-year acquaintance with defendant's suspected activities as a heroin dealer. Over the years, Officer Sutton had been informed by fellow officers in the Long Beach Police Department that they had personally observed defendant contact known heroin users in various locations throughout Long Beach. More relevant to show probable cause are the facts set forth by Officer Sutton for the period of time immediately preceding issuance of the search warrant. In December 1976 Officer Sutton personally began his surveillance of defendant, which over the

following month revealed to him as an experienced narcotics officer that defendant exhibited typical movement patterns of the heroin dealer: long drives in the middle of the night, with frequent stops to make contact at places where recognized heroin users are known to congregate or live. The officer also knew from defendant's probation officer that defendant was on felony probation and had failed to report as required. Then, on February 7, three days before the warrant was issued, the officer received information from Torrance police that Torrance officers had purchased heroin at a Long Beach address that day from a man driving a red van registered to defendant. Also that same day, a Torrance Police Department narcotics officer told Sutton he had received information from a confidential reliable informant who was responsible for the arrest of at least nine suspects, five of whom had been convicted, that the informant had personal knowledge that the suspects from the Long Beach address had purchased heroin on ten different occasions from a man driving the red van registered to defendant. The next day, February 8, Officer Sutton participated in a search of the Long Beach address pursuant to a search warrant obtained by the Torrance narcotics officers. Heroin was found, together with an address book containing the name "Henry" followed by defendant's telephone number which Officer Sutton recognized from defendant's probation report. On February 9, a fellow Long Beach narcotics officer told Sutton that a confidential informant said he had purchased heroin from defendant at defendant's bar in Long Beach on numerous occasions within the past two weeks. This informant identified defendant from his photograph as the seller of the heroin.

The next day, February 10, Officer Sutton obtained the search warrant from Long Beach Municipal Court. Accompanied by five other Long Beach Police Department officers, he went to defendant's home in Lakewood, where the warrant was served on defendant at the front door of his residence shortly after midnight on February 11. They all went into the living room, where defendant and his wife sat on the couch while officers searched the house. Officer Scholtz remained in the living room and advised defendant of his *Miranda*[1] rights. Asked if he wished to waive his rights, defendant responded, "What's there to say?" Shortly after that, one of the officers returned to the living room carrying seven balloons of heroin and a gun found in the den. Defendant was asked if there were any more guns in the house; he replied there were two more and described where they could be found upstairs. The guns were recovered where defendant said they were located. Officer Scholtz

---

[1] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

testified that it was his intention to search every room of the house regardless of any statements defendant might have made because in his experience a narcotics search requires looking very thoroughly into any small place which might contain a balloon of heroin.

Defendant contends on appeal that:

1. The search warrant was illegally served outside the jurisdiction of the Long Beach Police Department.

2. The facts set forth in the affidavit were insufficient to establish probable cause to issue the search warrant.

3. The magistrate failed to comply with Penal Code section 1541.

4. The revolvers found and seized as a result of defendant's response to the police question should be suppressed as tainted by a *Miranda* violation.

*The search warrant was properly issued and served.*

■ The People urge this court to take judicial notice of those law enforcement agreements between (1) the Los Angeles County Sheriff and the Long Beach Chief of Police, and (2) the City of Lakewood and the County of Los Angeles, in order to show that Long Beach police officers were not acting outside their territorial limitations in violation of Penal Code section 830.1 by serving the search warrant in Lakewood. Penal Code section 830.1, subdivision (b) authorizes a city police officer to act as a peace officer in another city if the officer has the prior consent of either that city's police chief or the sheriff of the county in which the city is located.[2] (See *People* v. *Pina* (1977) 72 Cal.App.3d Supp. 35, 40 [140 Cal.Rptr. 270].) These agreements, the People contend, prove that the Long Beach officers were acting within their authority because the agreements are direct evidence of the sheriff's prior consent as required by the statute.

---

[2]Penal Code section 830.1, as it read in pertinent part on the date the search warrant was executed, provided that:

"Any sheriff, undersheriff, or deputy sheriff, regularly employed and paid as such, of a county, any policeman of a city, [or] any policeman of a district authorized by statute to maintain a police department . . . is a peace officer. The authority of any such peace officer extends to any place in the state: . . . . [¶] (b) Where he has the prior consent of the chief of police, . . . if the place is within a city or of the sheriff, . . . if the place is within a county . . . ."

An amendment to the statute, effective January 1, 1978, did not change the above quoted portion of the text.

However, we face an insurmountable difficulty in accepting the People's argument. The Long Beach-Los Angeles agreement (known in the sheriff's office as an "exchange of letters" pursuant to Pen. Code, § 830.1) apparently did not exist at the time this warrant was served in February 1977. The Long Beach-Los Angeles exchange of letters is dated December 1977 and the Los Angeles County Undersheriff's office where these agreements are filed has no record of any prior exchange of letters between the City of Long Beach and the County of Los Angeles before that date. In sum, we cannot judicially notice a document which was not in existence at the time for which it is offered as proof of an established fact.

■ Even if there were a valid agreement, it would not be of substantial consequence to the determination of the action because of our holding below that county-wide service or execution of a search warrant is authorized by the plain meaning of the language in Penal Code sections 1528-1530.

Penal Code section 1528, subdivision (a), requires a magistrate who is satisfied that probable cause exists to issue a search warrant "to a peace officer *in his county,* commanding him to forthwith search the person or place named . . . ." (Italics added.) Section 1529 then specifies the mandatory form of the warrant, which shall begin as follows:

"County of _____

"The people of the State of California *to any sheriff, constable, marshall, or policeman in the County* of _____ . . . ." (Italics added.) Section 1530 next provides that "[a] search warrant *may in all cases be served by any of the officers* mentioned in its directions . . . ." (Italics added.)

It is impossible to avoid the common sense reading that these three statutes together authorize county-wide service of a valid search warrant. The plain meaning of the language of these statutes makes inevitable our holding that where, as here, a search warrant is properly issued, the warrant may be served any place within the county by the officers named in its directions. Nothing in our statutory or decisional law negates this holding, but we have been able to find only one case which so simply stated the obvious. (*People* v. *Scott* (1968) 259 Cal.App.2d 268, 280 [66 Cal.Rptr. 257].)[3]

---

[3]It has generally been held that a *warrantless* arrest and/or search made by an officer acting outside the limits of the territorial jurisdiction which he serves will be voided (see cases cited in *People* v. *Grant* (1969) 1 Cal.App.3d 563, 569 [81 Cal.Rptr. 812]; cert. den. (1970) 400 U.S. 845 [27 L.Ed.2d 82, 91 S.Ct. 91]), absent proof of prior authorization

Seen in this light, the meaning of Penal Code section 830.1 comes into clearer focus. Thus, the provision in that section which extends the authority of an officer to "any place in the state" where he has the prior consent of the police chief in a city, or of the sheriff in a county, does not refer to a nebulous statewide authority but synthesizes the concepts of territorial limitation and reciprocity of law enforcement services. A police officer executing a valid search warrant outside the boundaries of the city or political entity which he serves, but still within the county, does not need the prior consent of that county's sheriff to properly serve the warrant because the officer is already authorized to serve the warrant anywhere in his county under Penal Code sections 1528-1530.

*The facts set forth in the affidavit for the search*
*warrant were sufficient to establish probable cause.*

Defendant attacks the affidavit on a number of grounds: that the information was stale, that information received from confidential informants was uncorroborated and unreliable, and that no probable cause existed to support issuance of the warrant. None of these contentions can withstand scrutiny of the relevant standards for upholding a warrant. ■ First, it is well settled that " '[t]he warrant can be upset only if the affidavit fails *as a matter of law* to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit . . . .' " (Italics in original. *People* v. *Benjamin* (1969) 71 Cal.2d 296, 302 [78 Cal.Rptr. 510, 455 P.2d 438], citing *People* v. *Govea* (1965) 235 Cal.App.2d 285, 297 [45 Cal.Rptr. 253].) In examining the affidavit for sufficiency of the facts therein to support the magistrate's finding of probable cause, it is

---

(*People* v. *Aldapa* (1971) 17 Cal.App.3d 184 [94 Cal.Rptr. 579]) or hot pursuit (*People* v. *Sandoval* (1966) 65 Cal.2d 303 [54 Cal.Rptr. 123, 419 P.2d 187], cert. den. (1967) 386 U.S. 948 [17 L.Ed.2d 878, 87 S.Ct. 985]). Both the latter two exceptions have been applied to uphold warrantless arrest outside the county (*People* v. *Pina* (1977) 72 Cal.App.3d Supp. 35 [140 Cal.Rptr. 270] [prior consent]) and execution of a search warrant outside the county (*People* v. *Grant, supra,* [hot pursuit]).

Although it has been suggested that search warrants should be effectively limited to the county where issued (*People* v. *Grant, supra,* at p. 568), the Supreme Court recently held that a Santa Clara County magistrate had jurisdiction to issue a search warrant for defendant's residence in San Mateo County on the ground that Santa Clara was the most convenient forum because defendant had been arrested in Santa Clara when the warrant was issued and the charges relating to the evidence were triable in Santa Clara County. (*People* v. *Ruster* (1976) 16 Cal.3d 690, 702 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) Thus, the recent cases indicate a trend away from strict application of the former territorial limitation rules.

axiomatic that the courts are to interpret the affidavit in a common sense, nontechnical manner. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337].) The reviewing court will pay substantial deference to the magistrate's determination of probable cause (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 111 [12 L.Ed.2d 723, 726-727, 84 S.Ct. 86]) and may sustain a search where one without a warrant would fail (*United States* v. *Ventresca, supra,* 380 U.S. 102, 109 [13 L.Ed.2d 684, 689]).

While it is true that the officer's twenty-two page affidavit contained some stale information, the relevant facts to support a finding of probable cause all occurred within two weeks before the warrant was issued. As set forth in the affidavit and the summary of facts above, the three days preceding issuance of the warrant produced four items of significant information that defendant was actively selling heroin. Information less than three days old cannot be called stale by any definition.

■ For an informant's hearsay statement in the affidavit to be legally sufficient to support a finding of probable cause, California has followed *Aguilar* in holding that two requirements must be met: (1) the affidavit must set forth the informant's statement in factual rather than conclusionary language and must establish that the informant spoke from personal knowledge; and (2) the affidavit must contain some factual information from which the magistrate can conclude the informant was reliable. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 152 [81 Cal.Rptr. 613, 460 P.2d 485].) Here, the informant who advised police of defendant's heroin sales in Long Beach three days before the warrant issued was totally reliable, having given information in the past which led to the arrest and conviction of at least five suspects. Additionally, officers who searched that Long Beach address found evidence there which connected defendant to the crimes. Moreover, the affidavit taken as a whole was replete with information corroborating defendant's narcotics activities. Reliance on the information set forth in the affidavit was reasonable. It cannot be said the warrant was issued without probable cause. (See *People* v. *Flores* (1968) 68 Cal.2d 563, 566-567 [68 Cal.Rptr. 161, 440 P.2d 233], cert. den. (1969) 393 U.S. 1057 [21 L.Ed.2d 698, 89 S.Ct. 697].)

*The magistrate complied with Penal Code section 1541.*

■ Defendant claims that the issuing magistrate failed to promptly file the search warrant and its return in the proper court. This contention

is without merit. The trial court correctly noted that, in the absence of a motion to transfer to another municipal court district, the issuing municipal court had the power to inquire into the offense. Further, defendant made no showing why a failure to comply with the procedural requirements of Penal Code section 1541 provides a basis for invalidating the warrant and excluding the evidence.

*The revolvers were properly seized.*

■ Defendant argues that the officers were led to the revolvers found upstairs as a result of a statement he made without waiving his *Miranda* rights and that the guns should therefore be suppressed as evidence. We find no merit in this contention. Police testimony established that they would have searched every crevice of the house for heroin, a necessity when looking for narcotics, regardless of any statements made by defendant. The doctrine of inevitable discovery thus clearly applies. (*People* v. *Superior Court (Tunch)* (1978) 80 Cal.App.3d 665, 673 [145 Cal.Rptr. 795].) This doctrine, adopted in both state and federal decisions, has been defined as follows: " 'Although typically any evidence obtained, even indirectly, through the illegal actions of police is inadmissible as 'fruit of the poisonous tree,' where the court finds that the challenged evidence would have been eventually secured through legal means regardless of the improper official conduct, the inevitable discovery exception allows the evidence to be admitted. The doctrine was developed to prevent unjustly granting criminals immunity from prosecution.' (Novikoff, *The Inevitable Discovery Exception to the Constitutional Exclusionary Rules* (1974) 74 Colum.L.Rev. 88; fns. omitted.)" (*Id.*) Thus, where there is a reasonably strong probability that the evidence would have been discovered "in the normal course of a lawfully conducted investigation" (*Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166, 170 [89 Cal.Rptr. 731, 474 P.2d 683], cert. den. (1971) 402 U.S. 910 [28 L.Ed.2d 652, 91 S.Ct. 1387]), it will not be excluded. (*People* v. *Superior Court (Tunch), supra,* 80 Cal.App.3d 665, 682.) Here, the trial court in its denial of defendant's motion to suppress made a specific finding that the weapons would have been discovered without reference to defendant's statements. The record contains substantial evidence to support this finding, which we therefore uphold.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 21, 1979. Mosk, J., was of the opinion that the petition should be granted.