[Crim. No. 20215. First Dist., Div. Four. Dec. 16, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BYRON F. BARNUM, Defendant and Appellant.

**COUNSEL**

Jaime Alcabes, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thomson, Jr., and Franklin D. Elia, Deputy Attorneys General, for Plaintiff and Respondent

**OPINION**

**KRONINGER, J.*—**Appellant was found guilty of attempted murder, stipulated to be of the first degree on his plea of nolo contendere, and was sentenced to five years in prison, the lower term specified by Penal Code section 664.

*Search Warrant*

He first contends that evidence seized pursuant to a search warrant should have been suppressed because the underlying affidavit did not establish probable cause for believing that he was guilty of having committed any offense or that the items sought would be found in his residence or vehicle and, further, because the warrant was unconstitutionally overbroad.

The seven-page affidavit for search warrant submitted to the United States District Court, Northern District, California, contained the fol-

---

*Assigned by the Chairperson of the Judicial Council.

lowing allegations of a United States postal inspector. On August 29, 1977, United States postal inspectors assumed responsibility for investigation of an explosion that day at the offices of the Geography Department at California State University at Hayward (CSUH). A package, addressed to Dr. John A. Vann of that department, had exploded upon opening. Dr. Vann sustained minor injury. The package had apparently been mailed from Berkeley, three days earlier.

Another former CSUH geography professor was the recipient of a second device, which detonated at his residence in Cincinnati the following day. This package was apparently mailed from Hayward, California. No one was injured in the Cincinnati explosion.

Shortly after the investigation began the inspectors were contacted by two former CSUH geography students, each having received a letter purporting to be from the other and implicating them. Investigation, however, led the inspectors to conclude that they were not involved in mailing the devices.

A week later, the Berkeley Post Office, Berkeley Police Department, FBI office in Berkeley, and the Alameda County sheriff's office received letters warning of the explosive devices and stating that former classmates of the author were responsible. These letters were purportedly from a Mike Kimmel in Jacksonville, Florida, but when contacted he disavowed any knowledge of them. It was discovered that these four letters had in fact been mailed to Berkeley from a mail forwarding agency in Jacksonville, which had in turn received them in an envelope postmarked Berkeley.

Kimmel told the postal inspectors that he had received a threatening letter some months before, purportedly from the Students for a Democratic Society (SDS), making derogatory references to the fact that he was in military service. Kimmel had never been in military service.

The postal inspectors, operating on the assumption that the CSUH geography department was the focus of whatever plot was afoot, reviewed the school records of that department and found appellant's name, as well as that of a Mike Kimmel, evidently the intended recipient of the SDS Kimmel letter. That Mike Kimmel, now in the Army, had attended CSUH and had been a classmate in 1971 of the students who had gotten the pretended exchange of letters and appellant.

That Kimmel said that he had received similar threatening letters in 1973, critical of his having entered military service. He further said that the only people at CSUH who had known of his plans to enter the Army were appellant and one of the two letter "exchange" students.

Appellant's CSUH files were examined. They included a typed letter and several handprinted documents, which were examined by a government document analyst, who determined that the 1976 "SDS" letter received by the Florida Kimmel was written by appellant. At CSUH postal inspectors also uncovered two letters derogatory of another geography professor there; one of them, signed "Black Dragons," had been handprinted by appellant, and the other, purportedly signed by Dr. Vann, the explosive device victim, had been typed on the same typewriter that appellant had used to type a letter found in his school file.

The affidavit alleging the above sought a warrant to search appellant's apartment and car in Eureka, California, where he was then living. The United States District Court issued the warrant and it was served on appellant the following day. A brief search uncovered documents and materials, including shotgun shells, nails, tubing, screws, cotton, wood, a mouse trap, metal pipe, batteries, matches, and a saw, among other things. Appellant was thereupon placed under arrest.

A motion to suppress the evidence was denied after a three-day hearing. Appellant contends that the ruling was erroneous on the ground that the affidavit did not establish probable cause to believe either that he was guilty of having committed any offense, or that the items sought would be found in his residence or vehicle.

█ The standard of probable cause for issuance of a search warrant is "whether the affidavit states facts that make it substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought" (*People* v. *Cook* (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal.Rptr. 605, 583 P.2d 130]), which in this case depends in turn on "whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused." (*People* v. *Stout* (1967) 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704].) In applying this test, the facts in the affidavit are to be interpreted in a common sense, not a "hypertechnical" manner. (*People* v. *Superior Court* (*Brown*) (1975) 49 Cal.App.3d

160, 165 [122 Cal.Rptr. 459].) "'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" (*Id.*, quoting *United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].) ▇ Once the issuing magistrate and/or reviewing trial court has determined that the warrant is valid, a reviewing court should not decide otherwise unless the affidavit is insufficient as a matter of law. (*Id.*, at p. 166.)

▇ The affidavit here presented facts which indicated that in the expert opinion of a government document analyst appellant had sent two letters attacking a member of the CSUH geography department faculty under forged signatures, one of which purported to be from another faculty member, the ultimate explosive device victim, Dr. Vann, and had also sent the threatening letter received by the Kimmel in Jacksonville, again under another name, the "SDS." Appellant was thus shown to be a person who harbored animosity toward at least one member of the geography department faculty and toward a former classmate, and as a person who had used the mails to vent his animosity in derogatory and threatening letters, using forged signatures. A strong suspicion was thus reasonably raised that appellant was the author of the letters warning of the explosive devices and attempting to implicate former classmates.

It was known that the perpetrator used a mail forwarding agency as a means of concealing the origin of the correspondence. Thus it was not determinative that appellant lived in Eureka and that none of the mailings were from that location. There are situations, as here, where the link between the offense and the items to be seized and the place to be searched has to rest not on direct observation, but on the type of crime, the nature of the items being sought, and normal inferences as to where a criminal would be likely to keep those items. (*People* v. *Superior Court* (*Brown*), *supra*, at p. 167.)

The facts presented to the magistrate made it substantially probable that appellant was involved in the mailing of the explosive devices, and that relevant evidence of that would be found at his residence and/or in his car. Sufficient facts were contained in the affidavit to justify "resolving the doubt in favor of the magistrate's finding of probable cause." (*People* v. *Superior Court* (1972) 6 Cal.3d 704, 714 [100 Cal. Rptr. 319, 493 P.2d 1183].)

■ Appellant's contention that the warrant as issued was unconstitutionally overbroad is not supported by the cases he cites. Those cases involved warrants authorizing general searches of records, books, correspondence and the like, without any restrictions limiting the search to such as would logically be presumed to be directly connected with the crime under investigation. The requirement that a search warrant particularly describe the property to be seized (Cal. Const., art. I, § 13; Pen. Code, § 1525) is designed to prevent exploratory searches. (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590]; *People* v. *Murray* (1978) 77 Cal.App.3d 305, 308 [143 Cal.Rptr. 502].) This requirement is satisfied if the warrant imposes a "meaningful restriction" upon the objects to be seized (*Burrows, supra*, at p. 249; *People* v. *Superior Court* (*Williams*) (1978) 77 Cal.App.3d 69, 76 [143 Cal.Rptr. 382]; *People* v. *Murray, supra*, at p. 308; *People* v. *Barthel* (1965) 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290].)

A meaningful restriction was imposed in this case. The search warrant listed "certain property, namely typewriter(s), tools, wires, shotgun shells, explosive materials and devices, correspondence, address books, school brochures, directories and other documents *which are the instrumentalities and evidence of crimes against the United States to wit: Title 18, United States Code, Sections 876 and 1716.*" (Italics added.) General descriptions were thus modified by the restriction that the items be instrumentalities and evidence of the crimes of mailing threatening communications (18 U.S.C. § 876) or mailing infernal devices (18 U.S.C. § 1716). The warrant here met the prescribed standards in that it identified the items to be sought and left nothing to the discretion of the searching officers. (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74].)

*Sentence*

■ Appellant was sentenced to five years in prison, the lower term specified by Penal Code section 664 as the penalty for an attempt to commit a crime punishable by life imprisonment. Section 664 prescribes punishment for "attempts to commit any crime . . . where no provision is made by law for the punishment of such attempts." Appellant asserts that, despite his plea of nolo contendere to attempted first degree murder, he was entitled to the lesser sentence prescribed for assault with intent to commit murder (Pen. Code, § 217), contending that section 217 is a "provision . . . made by law" for attempted murder, thus pre-

empting section 664 sentencing. He urges as an additional reason that attempted murder is an included, hence lesser, offense within section 217 assault and that to apply section 664 to impose its greater penalty would constitute cruel and unusual punishment and violate equal protection.[1]

Had appellant's criminal conduct amounted to assault with intent to commit murder within the meaning of section 217, his first assertion would, despite his conviction of attempted murder, find support in two recent decisions.[2] (*People* v. *Montano* (1979) 91 Cal.App.3d 221, 231-232 [158 Cal.Rptr. 47]; *People* v. *Gray* (1979) 91 Cal.App.3d 545, 558 [154 Cal.Rptr. 545]; but cf., *People* v. *Meriweather* (1968) 263 Cal.App.2d 559 [69 Cal.Rptr. 880]; *People* v. *Provencher* (1973) 33 Cal.App.3d 546 [108 Cal.Rptr. 792].) The People contend, however, that appellant's conduct did not amount to the crime defined by section 217. We agree, but not for the reason urged by respondent.

Section 12308 at the time of appellant's offense provided that: "Every person who explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to commit murder is guilty of a felony, and shall be punished by imprisonment in the state prison for a period of three, four, or five years." (The sentencing ranges have since been increased.) In our view section 12308 applies squarely to appellant's conduct. (Cf. also Pen. Code, § 12301; cf., generally, *People* v. *Quinn* (1976) 57 Cal.App.3d 251, 256-259 [129 Cal.Rptr. 139].) Inasmuch as section 12308 is a "provision...made by law for the punishment of" appellant's specific kind of criminal attempt as revealed by the record before us, it follows that section 664 by its own terms should not be looked to in fixing punishment for appellant's conduct.

The parties neither cite nor discuss section 12308, though its applicability was considered and rejected at the time of sentencing. But notwithstanding, and notwithstanding appellant's nolo contendere plea

---

[1]At the time of appellant's offense, the punishment for violation of Penal Code section 217 was two, three or four years, as compared with five, six or seven years for attempted first degree murder. (Pen. Code, §§ 190, 664.)

[2]Our disposition of this case renders it unnecessary to consider the impact on those decisions of the recent addition of paragraph 4 to Penal Code section 664: "If a crime is divided into degrees, an attempt to commit the crime may be of any such degree, and the punishment for such an attempt shall be determined as provided by this section." In any event, appellant's offense, like the offenses in those cases, was committed prior to such amendment.

to attempted murder, he is entitled to be sentenced to punishment prescribed for the offense which, upon the facts available to us in the record, he committed.

Had his plan succeeded, appellant would have been guilty of first degree murder. (Pen. Code, § 189.) There was, therefore, no error in finding him guilty of attempted first degree murder on his plea of nolo contendere. The only error, as we have seen, was in sentencing. Accordingly, by application of our power to correct patent sentencing errors on our own motion (cf., *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 497 [75 Cal.Rptr. 819]; *People* v. *Fleig* (1967) 253 Cal.App.2d 634, 642 [61 Cal.Rptr. 397]; *People* v. *Garrison* (1966) 246 Cal.App.2d 343, 356-357 [54 Cal.Rptr. 731]; *People* v. *Moore* (1967) 249 Cal.App.2d 509, 513-514 [57 Cal.Rptr. 449]), we conclude that the case must be remanded to the trial court for resentencing pursuant to Penal Code section 12308.

Our conclusion renders unnecessary a consideration of appellant's constitutional argument.

Appellant contends that Penal Code section 4019 entitles him to credit for "good time/work time," in addition to the time already credited against his sentence for the time spent in presentence custody. In light of *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], appellant may be entitled to additional conduct credit. The trial court may consider that question upon resentencing.

The judgment of conviction is affirmed. The case is remanded to the trial court with directions to resentence appellant pursuant to Penal Code section 12308 as it read at the time of the offense.

Caldecott, P. J., and Christian, J., concurred.