[Crim. No. 5048. Fifth Dist. Feb. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE MASON, JR., Defendant and Appellant.

**COUNSEL**

Kenneth I. Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRANSON, Acting P. J.—**

### STATEMENT OF THE CASE

Appellant stands convicted following a court trial of possession of hashish for sale in violation of Health and Safety Code section 11359. Appellant was sentenced to three years felony probation upon the condition he serve four months in the county jail.

As we shall explain, we reverse the judgment because of the failure of the affidavit supporting the search warrant to set forth facts from which the magistrate could rationally believe that the confidential informant was credible or that his information was reliable within the meaning of the "second prong"[1] of *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509].

---

[1] Appellant concedes that since the informant spoke from personal knowledge the "first prong" of *Aguilar* was satisfied.

## STATEMENT OF THE FACTS

On September 4, 1979, at approximately 5 p.m., a police informant, Mark McNeil, went to appellant's mobile home located in a trailer court.[2] When McNeil entered the trailer, he observed appellant sitting at a table with a scale breaking up a block of hashish and packaging it in tinfoil. Appellant told McNeil that he had a little less than an ounce of hashish and that he was cutting it into gram portions. Appellant offered to sell hashish to several other persons present in the trailer, and McNeil purchased marijuana from the appellant for $30. The next morning McNeil called Officer Michael Maacks and reported what he had observed in the trailer.[3] Officer Maacks presented an affidavit for a search warrant to Judge Vierra on September 6, 1979, and a warrant was issued. The warrant was executed at 7 a.m. on September 7. The police seized 13 tinfoil bindles containing 5.2 grams of hash, a baggie containing approximately 1 ounce of marijuana, a triple-beamed balance scale, a smoking pipe, and a sheet of paper with money totals indicating sales.

## DISCUSSION

■ Unlike the citizen informant, the criminal informant provides his information to the police usually for ulterior reasons other than good citizenship, and thus his information is viewed with suspicion. (*People v. Schmidt* (1980) 102 Cal.App.3d 172, 178 [162 Cal.Rptr. 171].) To establish the credibility of a criminal informant, it must be shown he has given reliable information in the past with regard to criminal activity or the information presently given is corroborated. (*People v. Superior Court* (*Johnson*) (1972) 6 Cal.3d 704, 711-712 [100 Cal.Rptr. 319, 493 P.2d 1183]; *People v. Schmidt, supra*, 102 Cal.App.3d at p. 178.)

---

[2]McNeil became a police informant because he had previously been arrested for a drug-related offense and agreed to act as an informant for the Kings County Narcotics Task Force. He had completed his agreement with the task force prior to September 4 and was acting independently when he went to appellant's trailer.

An *in camera* hearing was conducted on November 7, 1979, pursuant to a motion to disclose the identity of the informant. Following this hearing, Judge Manual N. Vierra ordered the prosecution to disclose the identity of the informant or dismiss. It was at this time that McNeil's identity was disclosed.

[3]McNeil, however, did not disclose to Officer Maacks at this time that he had purchased marijuana from the appellant. It was only when appellant was forced to testify under oath at the *in camera* hearing conducted on November 7 that he revealed that he had purchased marijuana from the appellant.

Officer Maacks' affidavit contained three facts which allegedly supported a finding that McNeil was a reliable and credible informant: (1) "[T]he confidential informant describes the residence at 414 Hanford Armoma Road, Space E-4 to your affiant and that your affiant has personally driven to this area, observed this residence, and found the residence is located and appears to be exactly as described by said confidential informant." (2) "[T]hat your affiant was advised by the confidential informant that said informant is familiar with the use and packaging of controlled substances, including hashish and marijuana. Your affiant was further advised by said confidential informant that on more than twenty occasions said confidential informant has personally seen and smoked controlled substances including hashish and marijuana." (3) "[Y]our affiant has personally been involved, on five separate occasions, wherein said reliable confidential informant has made controlled buys of controlled substances *under the direction and supervision of law enforcement officers.* Subsequent to these buys the substances which were purchased under controlled conditions were submitted to the Fresno Regional Laboratory and were subsequently verified as in fact being controlled substances." (Italics added.)

None of the above facts establish the credibility or reliability of McNeil, because they do not show he gave reliable information in the past with regard to criminal activity or that the information given in this case was corroborated. ■ Fact number one—McNeil's accurate description of the house—does not pertain to criminal activity. Mere accuracy of information regarding the suspect generally is insufficient. (*People* v. *Fein* (1971) 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583]; *People* v. *Scoma* (1969) 71 Cal.2d 332, 339 [78 Cal.Rptr. 491, 455 P.2d 419]; *People* v. *Gallegos* (1964) 62 Cal.2d 176, 179 [41 Cal. Rptr. 590, 397 P.2d 174].)

■ Fact number two—that McNeil had smoked marijuana and hashish on at least 20 occasions—merely shows McNeil's sophistication in the drug culture; it does not establish credibility or reliability. In the instant case, there was no police observation of any act or conduct on the part of appellant which tended to indicate he was violating the law. (See *People* v. *Amos* (1960) 181 Cal.App.2d 506, 508 [5 Cal.Rptr. 451].)

■ Nor does fact number three—that McNeil had been involved in five controlled buys at the direction and supervision of the authorities

—establish the credibility or the reliability of McNeil. This conclusion is mandated in spite of the following principles: First, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. Second, affidavits for search warrants must be tested and interpreted in a common sense and realistic fashion (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Superior Court* (*Johnson*), *supra*, 6 Cal.3d 704, 711; *People* v. *Barnum* (1980) 113 Cal.App.3d 340, 345-346-[169 Cal.Rptr. 840]). Third, to establish reliability of an informant, it is not necessary to establish his prior information led to convictions. It is sufficient that the prior information was accurate or was of such substance as to cause a reasonable person to conclude that it was reliable. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 876 [109 Cal.Rptr. 304, 512 P.2d 1208].)

On its face, the statement that McNeil "made controlled buys of controlled substances under the direction and supervision of law enforcement officers" does not indicate McNeil provided any information to the police. He merely made controlled buys at the direction and supervision of the police. The only way to uphold the search warrant is to draw an inference from the allegation that since McNeil was involved in controlled buys he necessarily must have provided the police with some of the information that resulted in the controlled buys taking place. This, however, is not a rational inference. To the contrary, if McNeil had provided the police with material information during the controlled buys the affiant presumably would have alleged this fact in the affidavit. This assumption is bolstered by the following testimony adduced at the preliminary examination.

"MR. HELDING [defense counsel]: Q. Mr. Maacks, in any of the experiences that you've recited in your search warrant concerning the informant, there was no instance in which the informant gathered information on his own and came and—brought it to you; is that right? You haven't recited anything in the affidavit that he furnished you with other information in the past that proved reliable that's not recited, is it?

"A. No, sir, it isn't.

"Q. And your reliability then is based on the fact that he had, prior to September 5, made five controlled buys in which he was wired and surveilled and that he had on more than 20 occasions seen and smoked hash and marijuana; isn't that right?

"A. Yes, sir."

The testimony of Officer Maacks shows the danger of drawing extenuated inferences from facts contained in an affidavit. In the instant case, it appears McNeil, in order to work off his own drug charges, cooperated with the police by participating as the purchaser during controlled buys. Apparently he was told to attempt to make a purchase at a given location from a certain person; he was then wired for sound and did exactly what he was told. On each of those five occasions McNeil bought a controlled substance. But there is no evidence he ever provided any information to the police. Therefore, there is nothing in the affidavit to establish the reliability and credibility of McNeil as an informant.

The Attorney General relies on the following language in *People* v. *Emanuel* (1978) 87 Cal.App.3d 205, 213 [151 Cal.Rptr. 44], "[h]ere, the informant who advised police of defendant's heroin sales in Long Beach three days before the warrant issued was totally reliable, having given information in the past which led to the arrest and conviction of at least five suspects." *Emanuel* on its face is distinguishable. As we previously stated, in the instant case, McNeil never provided the police with any information which led to the arrest or conviction of any defendant.

The judgment is reversed.

Zenovich, J., and LaRue, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.