Filed 6/26/14  P. v. Flores CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048569 |
| v. | (Super. Ct. No. 12WF2499) |
| ROBERTO ALCANTAR FLORES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer and Lance Jensen, Judges.  Affirmed.

Michael Ian Garey for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

Roberto Alcantar Flores appeals from a judgment of conviction of certain drug offenses (possession for sale, sale of controlled substance) following his guilty plea. Flores contends the trial court erred in denying his motion to suppress evidence obtained from an unreasonable detention and illegal search of his person and car. Finding no error, we affirm the judgment.

FACTS AND PROCEDURE

*The Detention and Search of Flores's Person and Car*

The testimony and an electronic recording accepted into evidence at the suppression hearing established the following facts:

Around noon on September 15, 2012, two Orange County Sheriff's deputies, Mark Baltodano and Anthony Garza, were patrolling an area of Stanton in a marked squad car. As Baltodano drove through a strip mall parking lot, he observed activity in a row of parked cars. A woman later identified only as "Davis" was squatting down along the driver's side of a white Nissan, her head at window level, leaning in toward the driver. Flores was in the driver's seat, also in "kind of . . . a squatted down position." Considering this "suspicious behavior," Baltodano told Garza "to keep his eyes on them" as the deputies drove past.

Baltodano testified Davis and Flores "looked at us" as the squad car passed by and, when Baltodano made a U-turn to head back toward the white Nissan, Davis stood up, walked away from the approaching squad car, and threw "an object" underneath a Hyundai parked nearby.

The deputies pulled up behind the white Nissan and Garza headed toward Davis to detain her. Meanwhile, Baltodano directed his attention to Flores, who "quickly exited his vehicle, shut the car door and began walking" towards a nearby Carl's, Jr. restaurant. Baltodano ordered Flores to come back and wait at the front of the patrol car, which Flores did. After Garza returned to the patrol car with Davis, Garza detained both Davis and Flores while Baltodano retrieved the item Davis had thrown under the

2

Hyundai. The item was a small Ziploc plastic baggie, marked with a black Nike symbol, containing approximately one gram of a substance Baltodano believed to be methamphetamine.

With that discovery, Baltodano handcuffed Davis and put her in the back seat of the patrol car. As Baltodano started to shut the car door, Davis spontaneously stated she "had just bought" those drugs from Flores and "if we searched his car there would be a lot more drugs in there because he was a drug dealer." She also told Baltodano she had paid Flores $30 for the drugs.

Baltodano returned to the front of the patrol car where Garza stood with Flores. Baltodano did a pat down of Flores as well as a search of Flores's pockets. Baltodano placed the contents of Flores's pockets, which included his car keys, on the hood of the patrol car.

A video recorder mounted inside the patrol car captured the interaction occurring between the deputies and Flores at the front of the patrol car. A copy of that electronic recording, transferred to a DVD, was admitted into evidence.[1]

The video shows a deputy, which testimony revealed to be Garza, speaking with Flores while they stood together in front of the squad car. In the audio portion of the recording, Garza can be heard asking Flores for his first, middle, and last names. There is then an inaudible exchange, and Flores gestures towards his own car. Garza replies, "Your ID's in there? Alright." Garza then asks Flores, "Mind if I grab your ID?" Flores appears to shrug in assent. Garza quickly follows up with the question, "Mind if I search your car?" Flores responds with an audible "Okay," and another seemingly assenting shrug. Flores then makes a small move as if to lead Garza to his car, but Garza can be heard to respond, "Stay there. Stay there." Garza then tells Baltodano, who is just

---

[1] One issue Flores raises in this appeal is the admissibility of the DVD. We summarize the relevant contents of the recording here. The record contains no written transcript of the audio portion of the recording.

3

coming into the frame, that Flores has said they can get his identification out of the car. A short time later, Flores can be seen in the video picking up his car keys from the hood of the patrol car and handing the keys to Garza, who leaves to search Flores's car.

Testimony revealed that when Garza opened the driver's side car door, he found cash inside the door handle. He handed the cash to Baltodano, who promptly counted it, finding it totaled $30 —the exact amount Davis said she had paid Flores in the drug buy. Garza then grabbed a loose interior panel of the driver's side door and a large bag of suspected methamphetamine fell to the ground. Garza removed the panel and many more baggies of suspected methamphetamine fell out. Each was a clear Ziploc baggie with a black Nike symbol and of a similar weight to the baggie Baltodano retrieved from the spot where Davis had thrown it.

In searching the car further, Garza found Flores's wallet, containing his identification, and hundreds of dollars in cash, as well as a possible "pay/owe sheet," and other incriminating items.

*The Two Suppression Hearings*

The People charged Flores with one count of possession of methamphetamine for sale (Health & Saf. Code, § 11378) and one count of sale or transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), and alleged he had three prior felony drug convictions. At his arraignment, Flores pleaded not guilty and denied the allegations of prior convictions.

Before the preliminary hearing, Flores filed a motion to suppress evidence pursuant to Penal Code section 1538.5.[2] The motion argued Flores's detention and the search of his person and car were unreasonable and violated his federal and state constitutional rights. On December 14, 2012, the magistrate heard the motion in conjunction with the preliminary hearing.

---

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

4

The People called Baltodano as the only witness at the hearing, and also offered into evidence the DVD containing the electronic recording, both video and audio, of the deputies' interaction with Flores while he was detained at the front of the patrol car. Before ruling on the DVD's admissibility, the magistrate watched and listened to it in the courtroom with all parties present.

The defense objected to the admissibility of the audio portion of the recording on three grounds. Defense counsel argued the audio was hearsay, lacked foundation, and was largely inaudible. He contended, more specifically, that "[a]lthough you get bits and pieces, the audio is . . . too difficult to hear the whole context to draw inferences from it." The magistrate overruled the defense objections and admitted the DVD into evidence.

After hearing Baltodano's testimony, and a lengthy argument on the suppression motion, the magistrate denied the motion to suppress and held Flores to answer.

Flores was subsequently arraigned and pleaded not guilty to the two drug charges and denied the alleged priors. Flores then filed a "quasi de novo" motion to suppress pursuant to section 1538.5, subdivision (i). Judge Lance Jensen heard the quasi de novo motion to suppress.

In preparation for the quasi de novo suppression hearing, the trial court read the defense motion, the People's opposition, the transcript from the combined preliminary hearing/motion to suppress hearing, and also watched and listened "repeatedly" to the electronic recording copied onto the DVD the magistrate had admitted into evidence. The trial court explained it had "listen[ed] to the whole thing more than two times, probably a dozen times listening to crucial areas as far as consent over and over again with the volume turned all the way and with earphones. I made sure that I saw what I saw and I understood what I understood, okay, which may or may not be in sync with what you all heard or saw, but it is what it is."

5

The defense again objected to admitting the audio portion of the electronic recording, arguing the audio lacked foundation, authentication, and the requisite written transcript of its contents, and was also largely inaudible.  Defense counsel also objected to the trial court's conduct in viewing the DVD in chambers rather than in open court with counsel and Flores present.

The trial court overruled the defense objections to the DVD.  The trial court also denied the motion to suppress, making the following specific findings:  The deputies lawfully detained Flores because they had reasonable suspicion he had committed a crime, the deputies had probable cause to "patdown" Flores after Davis stated Flores sold her the drugs she threw under the Hyundai, and the car search was lawful because Flores gave "valid consent" to the search.

Thereafter, pursuant to a plea agreement, Flores pleaded guilty to the two charged drug offenses and admitted the alleged prior convictions.  In accord with the plea agreement, the trial court sentenced Flores to three years in county jail.  (§ 1170, subd. (h).)

DISCUSSION

Flores argues the trial court erred in denying his motion to suppress.  He contends the evidence taken from his car was the product of an unreasonable detention, an illegal search of his person, and an illegal search of his car.  None of his claims has merit.

*Standard of Review*

In reviewing the denial of a suppression motion, we apply the substantial evidence standard to the trial court's findings of fact, viewing the evidence in the light most favorable to the trial court's ruling.  (*People v. Woods* (1999) 21 Cal.4th 668, 673 (*Woods*).)  The trial court is vested with the power to weigh evidence, draw factual inferences, resolve conflicts in the testimony, and judge the credibility of witnesses.  (*Ibid*.)  Consequently, we will not disturb the trial court's factual findings so long as they

6

are supported by substantial evidence.  We review de novo, however, the legality of the challenged detention and search on the facts so found.  (*People v. Sanders* (2003) 31 Cal.4th 318, 324.)

*The Detention*

Flores contends his initial detention was unlawful and its fruit (the evidence found in his car) should have been suppressed because at the time Baltodano detained him, "virtually nothing had been observed to justify a detention[.]"  The argument has no merit.

Law enforcement officers may detain a person when they have an articulable suspicion the detained person has committed or is about to commit a crime.  (*Terry v. Ohio* (1968) 392 U.S. 1, 30; *In re Manual G.* (1997) 16 Cal.4th 805, 821.)  In reviewing the reasonableness of a detention, we consider the "'totality of the circumstances' of [the] case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  (*United States v. Arvizu* (2002) 534 U.S. 266, 273.)  The detention here easily meets that constitutional test.

The circumstances leading up to Flores's detention were sufficiently suspicious to justify an investigative stop.  The deputies had observed a woman crouching next to a parked car, leaning in toward the driver's side window, where the driver likewise was in a "squatted down position," and when the squad car made a U-turn to head back towards the parked car, the woman promptly walked away and threw an object under a nearby car.  The driver also reacted suspiciously at the sight of the returning squad car:  he immediately tried to leave the scene.  Observing such behavior, a reasonable officer would suspect the two individuals had been engaged in some illegal activity.  Consequently, Baltodano's detention of Flores was objectively reasonable, and therefore lawful.

7

*The "Pockets" Search*

Flores argues his detention, even if initially lawful, exceeded its proper scope when Baltodano searched Flores's pockets. Flores contends a patdown search of a detained person is permitted only if an officer has reason to believe the suspect is armed, and Baltodano had no basis for believing Flores carried a weapon. Flores argues this unlawful patdown and search of his person "vitiate[s] any purported consent to search" his car.

The argument fails because it ignores the facts of this case. Baltodano searched Flores's pockets only after the deputy had probable cause to arrest Flores for selling drugs to Davis. When Baltodano searched Flores's person, the deputy had already recovered the baggie of suspected methamphetamine Davis had thrown under a car, and the deputy had also heard Davis state she had bought the drugs from Flores and Flores had more drugs inside his parked car. Those facts constituted probable cause to arrest Flores for the sale of illegal drugs. Consequently, the challenged search of Flores's pockets was justified not as a patdown for weapons, but rather as a search incident to arrest.

An officer may thoroughly search an individual incident to a lawful arrest. (See *Rawlings v. Kentucky* (1980) 448 U.S. 98, 110-111.) Importantly, it does not matter that the search preceded the arrest rather than vice versa, so long as the "formal arrest follow[s] quickly on the heels of the challenged search." (*Ibid.*) That is what happened here.

*The Search of the Car*

Finally, Flores argues the warrantless search of his car was unlawful. He contends the facts do not support application of any of the recognized exceptions to the constitutional requirement of a warrant before conducting a search. Specifically, he contends the search cannot be justified as a search incident to an arrest because he "was safely away from his car" when the search occurred. Nor, he contends, can the search be

8

justified on the basis of probable cause because there was none.  Finally, he argues there is no admissible evidence he consented to the search.  All of his contentions fail.

Flores's search incident to arrest argument deserves short shrift.  As the United States Supreme Court recognized in *Arizona v. Gant* (2009) 556 U.S. 332 (*Gant*), the search incident exception to the warrant requirement has a unique application in the context of a vehicle search.  "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'  [Citation.]  In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.  [Citations.]  But in others . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein."  (*Id.*, at pp. 343-344.)

In this case, the deputies had the requisite "reasonable basis to believe the vehicle contains relevant evidence" to justify an immediate search of the car.  (*Gant*, *supra*, 556 U.S. at p. 343.)  Before the car search, Baltodano had recovered a baggie of suspected methamphetamine he saw Davis throw, and Davis told Baltodano she bought the drugs from Flores.  Also, the two deputies themselves had seen Davis and Flores seemingly engaged in some transaction while Flores was sitting inside his car.  Moreover, Davis told Baltodano that Flores had "a lot more drugs in [his car] because he was a drug dealer."  These facts provided a reasonable basis for the deputies to conclude the car contained evidence relevant to "the crime of arrest."  Consequently, under *Gant*, these facts justified the car search as a search incident to Flores's arrest.

Flores argues next the deputies lacked probable cause to "arrest or search" Flores or to search his car because they could not justifiably rely on Davis's statement she bought the drugs from Flores.  The problem, according to Flores, is that "[Davis, as] a person in the midst of being arrested for possession of drugs, she cannot be deemed a reliable informant."  Thus, Flores contends, Davis's statement she bought the drugs from

9

Flores "should not be held to supply probable cause[.]" While Flores may be correct in asserting an untested informant's mid-arrest statement alone is insufficient to supply probable cause of another's guilt,[3] the probable cause argument fails because it wrongly assumes the deputies had only Davis's bare statement to support the arrest and search here.

As pointed out above, the deputies personally observed suspicious behavior on the part of Flores and Davis. That behavior, signaling possible criminal activity, included both suspects' attempts to flee the scene upon noticing the approaching squad car, and Davis's act of tossing an item under a car as she fled. The deputies confirmed their suspicions when Baltodano discovered the tossed item was a baggie of suspected methamphetamine. These facts, and the deputies' observation of the interaction between the suspects as Flores sat inside his car, corroborated Davis's statement she bought the drugs from Flores. Together, these circumstances easily supplied the probable cause needed for the arrest and car search.

Flores also argues the trial court erred in concluding the warrantless car search was lawful because Flores gave his consent to the search. Flores contends the record is devoid of evidentiary support for the trial court's factual finding of consent. Flores begins his argument by pointing out the transcript from the combined preliminary hearing/motion to suppress contains "no evidence of any consent[.]" Flores then asserts the "only evidence even remotely addressing [the consent] issue" is the DVD containing the electronic recording of the incident, but Flores argues the trial court erred in admitting

---

[3]         Flores cites three cases for the proposition that information from an "arrestee-informant" is an insufficient basis for a search warrant, absent corroborating evidence or proof the informant previously supplied reliable information. (See *People v. Amos* (1960) 181 Cal.App.2d 506 , *People v. Mason* (1982) 132 Cal.App.3d 594 , *People v. French* (2011) 201 Cal.App.4th 1307.) The cases do not assist Flores because Davis's statement was corroborated by the deputies' observations.

10

the audio portion of that recording into evidence. Thus, he argues, "there is no record from which this court can conclude that any consent was ever given." Flores is wrong.

We conclude the trial court properly admitted the DVD into evidence, including the audio portion which was sufficiently audible to be relevant evidence on the issue of consent. Baltodano provided adequate foundation and authentication for the DVD, and the lack of a written transcript of the audio portion of the recording was no barrier to admission of the recording. As the trial court noted, such a transcript is intended merely as an aid to the trier of fact and is not required in every instance. [4]

Most importantly, we find the electronic recording on the DVD provided ample evidentiary support for the trial court's finding Flores consented to the search of his car. The trial judge based his finding of consent on the recording, which the judge listened to multiple times, "with the volume turned all the way [up] and with earphones." The trial judge clearly took pains to consider that evidence carefully and was confident he *saw* and *heard* Flores consent to the search. "I made sure that I saw what I saw and I understood what I understood . . . ." The power to draw factual inferences from evidence is among the powers with which the trial court is specifically vested. (*Woods*, *supra*, 21 Cal.4th at p. 673.)

The trial judge, like the magistrate before him, concluded Flores responded "sure" when asked by Garza if he could search Flores's car. Both triers of fact also particularly noted Flores's compliant body language and gestures of acquiescence that

---

[4] California Rules of Court, rule 2.1040, provides the trial court may decide "a transcript is not required." Rule 2.1040 provides in pertinent part as follows: "Electronic recordings presented or offered into evidence . . . [¶] . . . [¶] (b) Other electronic recordings [¶] (1) Except as provided in (2) and (3), before a party may present or offer into evidence an electronic sound or sound-and-video recording not covered under (a), the party must provide to the court and to opposing parties a transcript of the electronic recording and provide opposing parties with a duplicate of the electronic recording, as defined in Evidence Code section 260. . . . [¶] . . . [¶] (3) *No transcript is required* to be provided under (1). [¶] . . . [¶] (C) *If, for good cause, the trial judge orders that a transcript is not required*." (Italics added.)

11

accompanied Flores's verbal response of "okay" to Garza's request to search the car. The judge and magistrate also noted Flores offered his car keys to Garza to facilitate the search. Together, Flores's words and actions as depicted on the DVD, easily constituted substantial evidence he consented to the search.

Finally, we reject Flores's additional argument that the trial court's conduct in viewing the DVD alone, in chambers, deprived him of the right to be present, and to counsel, at a critical stage of the proceedings. As the trial court noted, there is no difference between the court's repeated, careful viewing of the DVD and its review of a transcript or reading of pertinent case authority. Such private study and contemplation is naturally done in chambers. Flores was present and represented by counsel at the critical stage at which the trial court heard argument as to the meaning and effect of the evidence on the DVD.

In conclusion, we, like the trial court, find the search of Flores's car was valid as a search incident to Flores's arrest. We also find probable cause supported the arrest and the attendant car search, and Flores gave the deputies his consent to the search. Consequently, the trial court properly denied the motion to suppress.

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

12