COMMONWEALTH vs. STEPHEN KAUFMAN & another.[1]

Suffolk. May 7, 1980. — August 5, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Search and Seizure. Probable Cause. Constitutional Law*, Search and seizure, Probable cause.

Statements in an affidavit in support of an application for a search warrant that one informant had told a policeman that the defendant was dealing with large quantities of marihuana and cocaine and that a second informant had stated that the defendant was moving marihuana and cocaine between one area and another were insufficient to show probable cause for issuance of the warrant since the description of criminal activity was without the detail, either as to its content or the process by which the content was obtained, that could raise it above the level of a casual rumor or a mere reflection of the reputation of the defendant. [302-305]

INDICTMENTS found and returned in the Superior Court on May 8, 1978.

Motions to suppress evidence were heard by *Smith, J.*

The Commonwealth's application for an interlocutory appeal was allowed by *Quirico, J.*, and the appeal was reported by him.

*Stephen R. Kaplan*, Assistant District Attorney, for the Commonwealth.

*John C. McBride* for the defendants.

KAPLAN, J. Here is the familiar question whether the affidavit of a police officer furnished probable cause for the issuance of a search warrant. The experienced judge below

---

[1] Barbara Riley Kaufman. She was present at the house at Flower Hill Road when the search hereinafter mentioned was made, and was indicted together with Stephen Kaufman for possession with intent to distribute various narcotic substances. (Stephen Kaufman was also indicted for assault and battery of an officer during the search.)

held, in the light of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and other authorities, that probable cause was not shown, and accordingly he suppressed materials recovered under the warrant. From that decision, a single justice of this court allowed an interlocutory appeal (G. L. c. 278, § 28E; Mass. R. Crim. P. 15 [b] [2], 378 Mass. 884 [1979]), and the case is here on his report without decision. We agree that the warrant was issued without a proper basis.

We deal seriatim with the statements in the affidavit of Sergeant Edward J. Branscombe of the State police, the sole support for the warrant to search premises of Stephen Kaufman at Flower Hill Road, Warwick, for narcotic substances and related paraphernalia. Branscombe narrated that an unnamed person approached him in August, 1977, and said that Kaufman was dealing in the Amherst area with large quantities of marihuana and cocaine. In 1975 a second unnamed person told Special Agent Michael W. Meyrick of the Federal Drug Enforcement Administration that Kaufman was moving marihuana and cocaine between the Amherst area and Vermont; also that Kaufman used the name Stephen Plumb. The former piece of information was repeated in October, 1977. Of the first person, Branscombe stated that he has supplied accurate information in the past which led to the arrest and conviction of a certain individual on drug charges. That reported experience was enough to qualify the person as a source of information. See *Commonwealth* v. *Hall*, 366 Mass. 790, 797 (1975). The same could not be said of the second person, of whom Meyrick had said only that he was "reliable." The difference lay in the absence in the second case of circumstances from which reliability of the informant could be inferred. See *Aguilar*, 378 U.S. at 114-115. Compare *Commonwealth* v. *Snow*, 363 Mass. 778, 783 (1973), with *United States* v. *Canieso*, 470 F.2d 1224, 1229 (2d Cir. 1972).

However, regardless of the qualification of either informant as a source, the information provided was not enough to base a warrant, for the description of criminal activity was

without the detail, either as to its content or the process by which the content was obtained, that could raise it above the level of a casual rumor or a mere reflection of the reputation of the supposed actor. See *Spinelli* v. *United States,* 393 U.S. 410, 416 (1969); *Commonwealth* v. *Stevens,* 362 Mass. 24, 28-29 (1972).

A tip in itself inadequate may be fortified through corroboration of its elements by means of police investigation. See *Commonwealth* v. *Vynorius,* 369 Mass. 17, 20 (1975); *Commonwealth* v. *Anderson,* 362 Mass. 74, 76 (1972). But here the informants' accounts were barren of elements that could lend themselves to impressive corroboration.[2] Branscombe did indeed aver that the police established that Kaufman used the alias Stephen Plumb; but this was not weighty enough to establish reflexively that the second informant was trustworthy or that his assertion about Kaufman's criminal activities was well buttressed. The case of *Draper* v. *United States,* 358 U.S. 307 (1959), is an example of satisfactory corroboration, in marked contrast to what was tendered here.[3] See also *Commonwealth* v. *Avery,* 365 Mass. 59, 63 (1974).

Although intrinsically insufficient, and insufficiently corroborated, a tip can yet count as a factor in a total picture that may satisfy a magistrate as to probable cause. See *Spinelli* v. *United States,* 393 U.S. at 418; *United States* v. *Baker,* 577 F.2d 1147, 1151-1152 (4th Cir.), cert. denied sub nom. *Weinstein* v. *United States,* 439 U.S. 850 (1978); *United States* v. *Canieso,* 470 F.2d at 1231. Thus police in-

---

[2] For purposes of the present case we need not be drawn into the question whether the corroboration may come from observation of innocent conduct or must derive from conduct suggestive of crime. Compare *United States* v. *Gonzalez,* 555 F.2d 308, 313 (2d Cir. 1977), with *United States* v. *Larkin,* 510 F.2d 13, 15 (9th Cir. 1974). Cf. *United States* v. *Tuley,* 546 F.2d 1264, 1269 (5th Cir.), cert. denied, 434 U.S. 837 (1977) (dissenting opinion).

[3] There the corroboration came from actions of the suspect conforming to the informant's prediction. (The precise question was on a warrantless arrest but the analysis is relevant to the sufficiency of an affidavit underlying a search warrant.)

vestigation may turn up facts which become particularly suggestive of criminal behavior in the light of the tip. See *United States* v. *Squella-Avendano,* 447 F.2d 575, 580, 582 (5th Cir. 1971). In the present case police surveillance, as recounted by Branscombe, disclosed the following. Kaufman maintained more than one residence and had used the name Plumb in connection with one of them. Kaufman associated with several "known illicit drug traffickers," including one person who had been convicted of drug violations in Federal court. State and Federal undercover agents had received information "indicat[ing]" that Kaufman "is referred to as 'Mr. Big' in illicit drug trafficking in Western Mass.," and that "large amounts of cash and drugs [are] kept at his address." Finally, on the day the warrant was issued and executed, March 30, 1978, officers observed an unknown male carrying into the target premises several plastic bags allegedly "consistent" in size and shape with bags commonly used to transport large amounts of marihuana.

There is no proper foundation in these statements, even when they are taken in combination, and the tips are superadded, for issuing a warrant to search the particular location. Notably absent is reliable specific information from any quarter placing illegal drugs or drug transactions there in the past (see *Commonwealth* v. *Vynorius,* 369 Mass. at 23); the report of undercover agents that drugs were kept in the house cannot serve, as it is a general averment unrevealing of any source in actual observation. So, too, the allegation of relationship with known drug offenders is left in the abstract — there is no connection with the premises, as was the case in *Commonwealth* v. *Hall,* 366 Mass. at 798, where such persons were seen entering and leaving the place.[4] It is "consistent" with the observation of bags at the locus that they were the common plastic bags which, if they are used

---

[4] As to the permissible extent of the use of reputation to support a warrant application, see 1 W.R. LaFave, Search and Seizure 474 (1978), and compare *Spinelli* v. *United States,* 393 U.S. at 414, with *United States* v. *Harris,* 403 U.S. 573, 581-583 (1971) (plurality opinion).

to move marihuana, are also used to move many other things. Weight may be given to the experience of law enforcement officers regarding criminal techniques (*Commonwealth* v. *Taglieri,* 378 Mass. 196, 199 [1979]), but here we have an equivocal circumstance distant from any inference that the magistrate could validly make as to what was in the container. See 1 W.R. LaFave, Search and Seizure 463-464 (1978). See also *Thomas* v. *Superior Court,* 22 Cal. App. 3d 972, 976-979 (1972); *Taylor* v. *State,* 9 Md. App. 402, 407 (1970). The original tips if added at this point do not alter the result that State and Federal constitutional requirements were left unsatisfied.

Like the judge below, we think it unnecessary to go into the argument that much of what was offered in the Branscombe affidavit, as above described, was too "stale" to serve as support for the warrant. See *Sgro* v. *United States,* 287 U.S. 206, 210 (1932).

*Order affirmed.*