COMMONWEALTH *vs.* JAMES L. GRZEMBSKI.

Worcester. November 6, 1984. — December 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Arrest. Probable Cause. Constitutional Law*, Admissions and confessions.

At a hearing on a motion to suppress statements made by the defendant after his arrest for breaking and entering in the daytime and larceny, evidence that police knew at the time of the arrest that the defendant had been on the victim's premises on the day of the incident and had previously been convicted of burglary and larceny, and that police had received a statement from a named private citizen who had learned from his step-brother of certain criminal activity involving the step-brother and the defendant warranted the judge's conclusion that there was probable cause to arrest the defendant. [519-522]

INDICTMENT found and returned in the Superior Court Department on December 8, 1982.

A motion to suppress evidence was heard by *Herbert F. Travers*, J., and the case was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Andrew Silverman* for the defendant.

*William F. George*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted of breaking and entering in the daytime and of larceny after a jury-waived trial in the Superior Court. He appealed, contending that his motion to suppress an inculpatory statement was improperly denied. The Appeals Court affirmed the conviction, 17 Mass. App. Ct. 1029 (1984), and we granted the defendant's application for further appellate review.

On September 8, 1982, the defendant was arrested pursuant to a warrant issued in connection with the August 25,

1982,[1] breaking and entering of a house in Sturbridge, and the larceny of certain items from this house. The arrest was made subsequent to a search of the defendant's Connecticut apartment and was the result of an investigation conducted by the Connecticut State police department and the chief of the Sturbridge police department (chief). At the time of the warrant application, police suspicion that the defendant had been involved in criminal activity was founded largely on information provided to them by a private citizen, one Edward A. Dodge.[2] After he had been arrested, the defendant made certain statements to the chief.

The defendant contends that the Superior Court judge erred in denying the defendant's motion to suppress his statement made to the chief after the arrest. He argues that the statement should have been suppressed because the arrest was without probable cause and his subsequent statements to the police were tainted by that illegality. We conclude that the motion judge did not err in admitting the defendant's statement in evidence and that the record supports the judge's finding that there was probable cause to arrest the defendant. We, therefore, affirm the defendant's conviction.

On August 25, 1982, certain items[3] were taken from a house in Sturbridge. Members of the Connecticut State police department were assigned to assist the chief of the Sturbridge police department in the investigation. On September 7, 1982, the chief obtained a written and signed statement from Edward A. Dodge. On September 8, 1982, Detectives Kenneth Green and

---

[1] The affidavit supporting the search warrant states incorrectly that the breaking and entering occurred on August 23, 1982. This discrepancy in dates is not significant in our determination of probable cause to arrest the defendant.

[2] A summary of Dodge's statement was given in an affidavit prepared for a search warrant application prior to the arrest. The record fails to reveal the content of the affidavit, if any, in support of the application for the arrest warrant.

[3] The stolen items included: a gold watch; a Sony stereo amplifier, model 60-65 with SSN: 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; a TEAC recorder F-300 SN: 7514; an RCA nineteen inch XL100 color television with AM/FM radio SN: 936-360632; and assorted cameras and jewelry.

Gail N. Smith of the Connecticut State police applied for a warrant to search the defendant's apartment in North Grosvenordale, Connecticut. Pursuant to the search warrant, various items[4] were seized from the defendant's apartment on that day. Later that night, the defendant was arrested and taken to the Southbridge police station. The following morning, September 9, the chief transported the defendant from the police station to the Dudley Division of the District Court. There the defendant was interviewed by the probation department, and then taken by the chief into a small room in the clerk's office. Prior to interviewing the defendant, the chief, who "had known him since he was a youngster," advised him of his rights. The defendant signed a "Miranda card," reciting that he had received Miranda warnings, and then made an inculpatory statement which the chief transcribed and which the defendant later signed. During the interview, which "lasted perhaps five or six minutes," the defendant admitted the breaking and entering and the larceny.

Later on September 9, the defendant was arraigned on the complaints charging breaking and entering in the daytime and larceny. Prior to trial, the defendant moved to suppress both the evidence seized from his apartment and the statement made by him at the Dudley District Court. After a hearing, the judge allowed the motion to suppress the evidence seized, but denied the motion to suppress the statement. In allowing the motion to suppress the evidence seized pursuant to the search warrant, the judge stated that "[t]he description in the warrant of (jewelry) was entirely lacking in any specification . . . and could not be the basis of a rightful seizure."

As for the defendant's argument that his statement should be inadmissible because it was tainted by an illegal arrest, the motion judge found that "[a]lmost no evidence relating to the arrest of the defendant was offered to the court. The determination of whether or not the police had probable cause to arrest was only touched upon in a peripheral manner." The judge

---

[4] The items seized included: a Sanyo television SN: F8102978; a silver pig bank containing money; a tan leather jacket; two knives with cases; and two jewelry boxes, each containing assorted jewelry.

then considered the information known by the police at the time of the arrest. This information included Dodge's statement on September 7, and the knowledge of the police that items reported by Dodge to have been stolen had in fact been stolen from the victim's home. The search warrant affidavit revealed that the police also knew that the defendant had been on the victim's premises on the date of the breaking and entering and that the defendant had a previous record for burglary and larceny. The judge concluded that, "[w]hile the matter is not one entirely free from doubt, it is the opinion of the court that this was sufficient information for the police to have probable cause to arrest this defendant for the burglary and larceny at the [Sturbridge] house." The judge stated further that "[e]ven if the court had not reached the conclusion that the arrest in this case had been legal, the court would nevertheless be persuaded that any taint that may have come from an illegal arrest was sufficiently attenuated by the time that the police chief and the defendant arrived at the district court." After the suppression hearing, the defendant waived a jury trial and was convicted of breaking and entering and larceny.

The defendant argues here that his postarrest statement to the chief should have been suppressed because it was the fruit of his illegal arrest. We conclude that, since the police had probable cause to arrest the defendant, the motion to suppress the statement was denied properly. It is therefore unnecessary for us to consider the Commonwealth's argument that the statement was sufficiently attenuated from the arrest to permit its admission.

The statements in the search warrant affidavit were based on information provided by Sturbridge police officers to certain Connecticut State police detectives.[5] In the affidavit, Detectives Green and Smith stated that they were members of the Connecticut State police department. The affidavit recited that on September 7, 1982, Detective Green was assigned to assist the chief of the Sturbridge police department in the investigation

[5] Detective Green testified at the hearing that he and Detective Smith, the other affiant, had received the information included in the affidavit from the chief and Officer Neil Martin of the Sturbridge police department.

of a burglary and larceny of a home in Sturbridge. The incident was described as "occurr[ing] on 8-23-82 and . . . involv[ing] the theft of T.V.s, Jewelry, Cameras, Stereos and radios amounting to $6,000." The affidavit further stated that on September 7, 1982, the chief "obtained a written and signed statement from Edward A. Dodge . . . of 53 West St., Southbridge, Ma." The affidavit then summarized Dodge's statement in which he said that, on the morning of September 7, he had visited his step-brother, Philip Livernois, at 104 Main Street in North Grosvenordale, Connecticut. While at the Livernois apartment, Dodge noted a "19 [inch] RCA XL 100 Color T.V. with AM/FM radio" which Livernois admitted to him was stolen. Livernois also told Dodge that a friend who lived upstairs in apartment 103 "had some stolen items, such as a Sony Stereo Amp Model 60-65 #SN: 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."[6] The affidavit stated that the upstairs apartment was occupied by James Grzembski.

In addition to Dodge's statement, the police knew that on the day of the incident both Livernois and Grzembski were working for Philip R. Lanctot of 819 Dennison Drive, Southbridge, who operated the Hemlock Landscaping Company. Livernois and the defendant "were cutting grass on the victim's property on the day in question [August 25]." Finally, the affidavit stated that both Livernois and Grzembski have "an extensive record and [have] been convicted for Burglary and Larceny."

At the suppression hearing, the circumstances of the defendant's arrest were not presented to the judge except "in a peripheral manner." The chief testified, however, "that [the officers] had picked up . . . Grzembski on a warrant." Furthermore, defense counsel stated in his motion to suppress the statements that "complaints and warrants were issued by Dudley District Court." Even though the record fails to describe the arrest warrant issued by the District Court, or to indicate

---

[6] In light of the motion judge's finding that the police did not have the information relating to the serial number and model at the time of the warrant application, we disregard the information in considering whether probable cause existed.

the facts presented in any warrant application,[7] we conclude that there is a sufficient basis in the record to support the motion judge's finding that there was probable cause to issue the arrest warrant.

"Probable cause to arrest has been defined as facts and circumstances within the knowledge of the police and of which they had trustworthy information which were 'sufficient to warrant a prudent man in believing that the . . . [defendant] had committed . . . an offense.'" *Commonwealth v. Bowden*, 379 Mass. 472, 476 (1980), quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In the instant case, the police knew at the time of the arrest that the defendant had been on the victim's premises on the day of the incident and had previously been convicted of burglary and larceny. Furthermore, the police had received a statement from a named private citizen, Dodge, describing a conversation between Dodge and Livernois, his step-brother.[8] Although Dodge's statement constituted hearsay, it nevertheless had sufficient indicia of reliability and trustworthiness to ground a finding of probable cause. The statement was from an identified citizen living at a known address who asserted that he had personally learned of certain criminal activity from his step-brother. As Dodge's relative and an apparent participant in the criminal activity, Livernois constituted a sufficiently reliable source of information. In his statement, Dodge stated that Livernois admitted having stolen a television with radio similar to one known to have been stolen from the house in Sturbridge. Taken together with police knowledge from independent sources that the defendant was on the premises on the day of the incident and had a record of burglary

---

[7] There is no requirement in Massachusetts that an application for an arrest warrant be supported by an affidavit. *Commonwealth v. Baldassini*, 357 Mass. 670, 676 (1970). An application for a search warrant, however, must be supported by a signed affidavit "contain[ing] the facts, information, and circumstances upon which [the affiant] relies to establish sufficient grounds for the issuance of the warrant." G. L. c. 276, § 2B, as amended by St. 1965, c. 384. See K. B. Smith, Criminal Practice and Procedure § 82 (2d ed. 1983).

[8] Livernois subsequently pleaded guilty to complaints arising out of the breaking and entering of the Sturbridge home.

and larceny, this information was sufficient to support a reasonable belief that the defendant had committed a crime. At the suppression hearing, the judge did not find that probable cause was lacking for either the arrest or the search; in excluding the seized evidence, the judge found that the search warrant lacked sufficient specificity as to the items to be seized. The same information was known by the police[9] at the time of the application for the arrest warrant as was provided in the affidavit supporting the application for the search warrant.

The defendant has argued that under *Illinois* v. *Gates*, 462 U.S. 213, reh'g denied, 463 U.S. 1237 (1983), and two predecessor cases, *Spinelli* v. *United States*, 393 U.S. 410 (1969), and *Aguilar* v. *Texas*, 378 U.S. 108 (1964), the information provided by Dodge lacked sufficient indicia of reliability. We conclude that this line of cases and our recent decision in *Commonwealth* v. *Upton*, 390 Mass. 562 (1983), rev'd and remanded, 466 U.S. 727 (1984), reargued here October 2, 1984, are distinguishable because in those cases the identity of the informant was unknown or uncertain. Information provided by a named informant is generally accorded more weight, and many of the policy considerations underlying the concern in those cases to ensure reliability are not implicated when the police indicate in the warrant application or affidavit who the informant is. *Commonwealth* v. *Atchue, ante* 343, 347 (1984). Considered all together, the evidence in the record supports the motion judge's finding that there was probable cause to issue a warrant to arrest the defendant.

*Judgment affirmed.*

---

[9] We find that it is not significant that while two Connecticut State police detectives procured the search warrant, the arrest warrant was procured by Sturbridge police officers in a Massachusetts District Court. The information in the affidavit supporting the search warrant was provided to the Connecticut police detectives by certain police officers in Massachusetts who knew the contents of Dodge's statement and also knew of the defendant's presence on the premises on the day of the incident and of his prior record. See note 5, *supra*.