COMMONWEALTH vs. RICHARD J. MONTEROSSO.[1]

No. 90-P-1270.

Berkshire. June 12, 1992. - December 30, 1992.

Present: WARNER, C.J., ARMSTRONG, PERRETTA, DREBEN, JACOBS,
GILLERMAN, & GREENBERG, JJ.

*Search and Seizure*, Probable cause, Affidavit. *Probable Cause. Constitutional Law*, Search and seizure, Probable cause. *Controlled Substances.*

In the circumstances, the affidavit of a police officer, reciting that he had spoken with a named individual's landlords about their belief that that person sold controlled substances from his apartment and describing observations made by the affiant, by another police officer, and by a confidential informant, was sufficient under art. 14 of the Massachusetts Declaration of Rights to establish probable cause for the issuance of a warrant to search the apartment. [766-770] GILLERMAN, J., with whom GREENBERG, J., joined, dissenting.

At the trial of indictments charging the defendant with possession of marihuana, cocaine and LSD with intent to distribute, there was sufficient evidence to warrant a finding of intent to distribute the three substances alleged. [770-771]

INDICTMENTS found and returned in the Superior Court Department on June 6, 1989.

A pretrial motion to suppress evidence was heard by *Lawrence B. Urbano*, J., and the cases were tried before him.

*Janis M. Berry* for the defendant.

*Anne M. Kendall*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. Convicted by a Superior Court jury of possession of marihuana, cocaine and LSD with intent to dis-

[1]This case was initially heard by a panel comprised of Justices Jacobs, Gillerman and Greenberg and was thereafter submitted on the record and briefs to Chief Justice Warner and Justices Armstrong, Perretta and Dreben, who took part in the decision of this case in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

tribute, the defendant appeals, claiming that his motion to suppress evidence was wrongly denied and that the evidence adduced at trial was not sufficient to support the convictions. We affirm.

1. *The affidavit.* The question presented by the denial of the defendant's suppression motion is whether the affidavit of a police officer provided "a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched." *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). The necessary predicate is probable cause to believe that at the time of the search evidence of criminal activity would be found at the premises searched. *Commonwealth* v. *Reddington*, 395 Mass. 315, 323 (1985).

The affidavit, dated May 1, 1989, recites that on April 29, 1989, Mr. and Mrs. James McCalab, owners of a seven-family apartment house in Pittsfield, told the affiant, a police officer with considerable experience in drug investigations, that "they feel that their tenant in Apt. #5, Richard Monterosso, was dealing drugs from the apartment. [They said] . . . they felt that way because of the inordinate amount of traffic in and out of Monterosso's apartment." Mrs. McCalab said that on April 23 she saw fifteen to twenty people enter and exit the apartment in a one and one-half hour period. Mr. McCalab stated that on April 28 and April 29 he saw at least twelve to fifteen people on each day enter and leave Monterosso's apartment after a visit of less than five minutes. The McCalabs also reported that on some occasions the visitors left the area in cars, occupied by others, which had been kept running outside the apartment house.

The next paragraph of the affidavit recites that "[w]ithin the last 3 days I contacted a credible and reliable informant [CR1] who has made controlled buys of controlled substances for me in the past. As a result of these controlled buys search warrants were obtained and seizures of controlled substances and arrests of offenders occurred." After a failed attempt at making a controlled buy from the defendant, CR1 reported to the affiant that, while "talking to Richard Monterosso," the informant "saw a trail of smoke that

was definitely marijuana smoke exit the door of [a]partment 5 . . . ." He suggested to the affiant that he "would be able to smell the marijuana smoke if [he] went up in the hallway . . . and stood in front of door #5."

According to the affidavit, the affiant and a fellow officer, Sergeant Sciola, drove CR1 back to his house, and "Sgt. Sciola and myself then went into [the apartment house] and followed a distinct odor trail of marijuana to the door of apartment #5, the home of Richard Monterosso." From their past experience, the police officers recognized the smell of burning marihuana.

The affidavit gave a brief description of the apartment house, noting that there were three apartments on the second floor of the house, one of which was apartment #5, and four apartments on the first floor. Also, the affidavit described the "long and constant record of arrests [of Monterosso] for distributing controlled substances." The affidavit cited arrests on June 7, 1987, September 30, 1987, and October 12, 1987, as a result of which the defendant pleaded guilty to various marihuana and cocaine distribution crimes and spent a period of time in the Berkshire County house of correction. Finally, the circumstances and unusual amount of short term traffic reported by the McCalabs, coupled with Monterosso's record of recent convictions, led the affiant to state in a report incorporated in the affidavit: "This would show that [the defendant] definitely has a history and a[n] *up-to-date continuous record of selling controlled substances*" (emphasis supplied). The search warrant issued on May 1, 1989, and was executed on May 5, 1989.

The substantive components of the affidavit consist of the information conveyed by the McCalabs and CR1, the detection of the odor of marihuana by the affiant and his colleague, the report of the defendant's criminal record and the conclusions drawn by the affiant. Where the question of legal sufficiency is a close one, its resolution is often dependent, as the court's division well illustrates, upon the degree of deference given to the magisterial determination of probable cause and whether the analysis focuses primarily on the affidavit as

an organic whole or on its component parts. A fundamental principle of search warrant review is that "[t]he sufficiency of the affidavit is to be decided on the basis of a consideration of all of its allegations as a whole, and not by first dissecting it and then subjecting each resulting fragment to a hypertechnical test of its sufficiency standing alone." *Commonwealth* v. *Stewart*, 358 Mass. 747, 751 (1971). Moreover, when viewed as parts of a panoramic presentation, and not in isolation, the components of an affidavit may tend to buttress rather than undermine a determination of probable cause.

A logical and commonsense reading of the affidavit leads to the conclusion that marihuana was present in the defendant's apartment within two days of the date of the affidavit. During that period, not only did CR1 report seeing marihuana smoke emerging from the defendant's apartment but the affiant and another police officer also traced the odor of marihuana to the door of that apartment. For CR1's affidavit information to be given credence, his veracity must be established under the familiar two-pronged test of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). *Commonwealth* v. *Upton*, 394 Mass. 363, 373-376 (1985). While it is debatable whether CR1's past successful participation in controlled buys establishes his credibility,[2] the underlying circumstances of his report of marihuana smoke reasonably support the conclusion that his information was reliable.[3] The affidavit informs us that the police officers supervised the attempt and watched the informant enter and leave the building which housed apartment #5. It is reasonable to conclude that the informant, knowing that the police were so proximately positioned and,

---

[2]See *State* v. *Maddasion*, 130 Ariz. 306, 308 (1981); 1 LaFave, Search & Seizure §3.3(b), at 631 (2d ed. 1987).

[3]At issue here is whether the requirements of either the credibility or reliability "spurs" of the veracity "prong" of the *Aguilar-Spinelli* test have been met. If an informant's track record does not establish his credibility, the question posed is whether a conclusion that his information was reliable is supported by other evidence in the affidavit or by police corroboration. See Smith, Criminal Practice & Procedure §§ 211-215 (2d ed. 1983).

therefore, perhaps able to check his information, was unlikely to report falsely. Close supervision of an informant coupled with police involvement in his investigative activities substantially reduce the risk of falsehood. See 1 LaFave, Search & Seizure §3.3(f), at 686-687 (2d ed. 1987). Moreover, the detection of the odor of marihuana at the door of the defendant's apartment, in itself evidence of an incriminating nature, gives corroborating effect to the informant's observations and his prediction, reported in the affidavit, that the affiant "would be able to smell the marijuana smoke if [he] went up in the hallway . . . and stood in front of door #5." That the police officers' detection of evidence of marihuana outside of apartment #5 does not preclude possible explanation other than its presence within the apartment is of no moment. Although its information is "susceptible of other interpretations, . . . the affidavit must only establish probable cause, not proof beyond a reasonable doubt." *Commonwealth v. Byfield*, 413 Mass. 426, 431 (1992).

The statements of the McCalabs, standing alone, would not be sufficient to establish probable cause, even with the additional weight accorded information from identified informants. See *Commonwealth v. Grzembski*, 393 Mass. 516, 522 (1984). However, that information takes on added significance when combined with the affidavit report of the defendant's having been arrested on three occasions for selling marihuana and cocaine and pleading guilty to all three charges less than nineteen months prior to the date of the affidavit. "The record of prior convictions [may be] used as a factor because the convictions were recent, and the crimes sufficiently similar to be relevant on the determination of probable cause." *Commonwealth v. Germain*, 396 Mass. 413, 418 n.7 (1985) (approximately eighteen months between the defendant's sentencing, for crimes similar to that described in the affidavit, and date of the affidavit).

The McCalabs' observations of continuing activity, viewed in the context of the defendant's recent criminal record for drug crimes and buttressed by the weight which should be given to the special insight of an experienced police officer,

see *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199, cert. denied, 444 U.S. 937 (1979), and by affidavit evidence of the presence of marihuana in apartment #5 sometime after April 29, 1989, sufficiently establish the probability that illegal drugs would be found in that apartment.

Judicial concern for preserving and strengthening constitutional protections is not served by "[a] grudging or negative attitude . . . toward warrants," *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965), nor by disregard of well-established principles urging reviewing courts to "give great deference to the magistrate's determination of probable cause," *Commonwealth* v. *Upton*, 394 Mass. at 377, to "adopt a commonsense approach in reviewing searches under the Fourth Amendment as well as under art. 14," *Commonwealth* v. *Byfield*, 413 Mass. at 430 n.6, and to recognize that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca, supra* at 109.

2. *Sufficiency of the evidence.* The defendant argues that the small amounts of marihuana, cocaine and LSD found in the defendant's control as a result of the search of his apartment are sufficient only for conviction of possession and do not support inferences of intent to distribute. He points to police testimony that the amounts found were consistent with personal use as well as distribution and to the principle that a guilty verdict may not be upheld where the evidence tends equally to support guilt and innocence. See *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979); *Commonwealth* v. *Ferguson*, 384 Mass. 13, 19 (1981). The argument fails to recognize the weight which a jury reasonably could have given to (1) physical evidence of distribution found in the defendant's apartment including a hand-held scale, described in testimony as being of a type associated with the weighing and selling of marihuana, three one-pound bags with mari-

huana residue in them and an "OZ"[4] sheet commonly used to record drug transactions; (2) a police officer's testimony of his observation of several persons making short term visits to the defendant's apartment shortly before the search visits which he connected to the selling of drugs; (3) the defendant's admissions to police officers of selling small amounts of marihuana and cocaine to his friends and to the price he received for LSD; and (4) his admission that the drugs found in his apartment were to be used the next night at a party with his friends. The cumulative force of this trial evidence and the reasonable inferences which could be drawn from it amply satisfy the familiar directed verdict standard recited in *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979).

*Judgments affirmed.*

GILLERMAN, J. (dissenting, with whom GREENBERG, J., joins). The affidavit is inadequate for a number of reasons. The McCalabs were named and identified informants, and the credibility requirement may be relaxed where the named informant is also an eyewitness to or participant in the crime being investigated. See *Commonwealth* v. *Atchue*, 393 Mass. 343, 347-348 (1984). However, the McCalabs were not eyewitnesses to any criminal activity, see *Commonwealth* v. *Snyder*, 413 Mass. 521, 529 (1992); *Commonwealth* v. *Carey*, 407 Mass. 528, 534 n.4 (1990), and the information they reported to the police, at the most, provided suspicion, not probable cause, to believe that evidence of criminal activity would be found in apartment #5. Absent information that the persons entering and leaving apartment #5 had some known or suspected connection with illegal drug activity, such as known drug users as in *Commonwealth* v. *Valdez*, 402 Mass. 65, 71 (1988), or even suspected drug users or

---

[4]The OZ sheet was described at trial by a prosecution witness as containing names of persons, dollar amounts owed and, in one instance, the words "twenty pills."

dealers as in *Commonwealth* v. *Hall*, 366 Mass. 790, 798 (1975), the mere fact of the appearance of a large number of unidentified visitors — not an incriminating event under a variety of circumstances, as the Commonwealth's brief conceded — is not an adequate basis for an inference that evidence of criminal activity is probably in apartment #5.

The affidavit fares only slightly better on the basis of the allegations regarding the activities of CR1. Most important, CR1 was not an informant in the usual sense. There are no allegations that CR1, in the past, provided "tips" to the police that criminal business had occurred, was occurring, or is proposed for the future. See 1 LaFave, Search and Seizure § 3.3, at 611 (2d ed 1987). The affidavit merely recites that in the past CR1 had made controlled buys of controlled substances leading to arrests and the seizures of drugs; absent from the affidavit is any reference to the fact that the controlled buys were made as a result of information CR1 had brought to the police. So, too, in this case, the information about apartment #5 was disclosed by the McCalabs, not CR1, and the assigned task of CR1 was simply to make a controlled buy as directed by the police. See *People* v. *Mason*, 132 Cal. App. 3d 594, 599-600 (1982) (previous participation in controlled buys, without more, insufficient to establish informant's credibility); LaFave, *supra* § 3.3(b), at 631 ("The mere fact that the informant was given money and sent to a particular place to meet a suspect and then returned with narcotics, all under the close surveillance of police, alone indicates very little about the informer's credibility in the role of a reporter of facts when he is not under such close supervision").

While the past participation of CR1 in controlled buys leading to arrests and seizures of contraband may be entitled to some weight on the issue of his reliability, that past activity, standing alone, is not sufficient to establish his veracity. The mere fact of participation in controlled buys in the past, under circumstances left undescribed, and which are unconnected to the criminal activity under investigation in the case before the court, is substantially different from participation

in an *executed* controlled buy from the defendant which, as in *Commonwealth* v. *Benlien*, 27 Mass. App. Ct. 834, 838 (1989), yields up material evidence of the defendant's suspected criminal activity. In this case, then, the past performance of CR1, which does not appear to have been anything more than following police instructions, is not enough, without additional facts, to establish the credibility of CR1, and, therefore, collateral information generated by CR1 (observation of a trail of marihuana smoke emerging from apartment #5) in the course of the *failed* controlled buy from the defendant does not provide probable cause for a search warrant. More is needed by the Commonwealth to justify the issuance of the search warrant.

Of course, independent corroborating allegations in the affidavit "may supplement the informant's tip to support a finding of probable cause." *Commonwealth* v. *Reddington*, 395 Mass. 315, 322 (1985). At some unidentified time, the police attempted to corroborate the new information, but they, too, failed in the task. What they did was proceed to the apartment house within which, on the second floor, were three apartments, of which apartment #5 was one. There, in the hallway *outside* apartment #5, they smelled marihuana smoke. The corrobotation that is lacking is the observation that the police saw and smelled marihuana smoke *emerging from* the doorway of apartment #5. This omission is no "hypertechnical" quibble, see *Commonwealth* v. *Mendez*, 32 Mass. App. Ct. 928, 929 (1992), and cases cited, for the affidavit is barren of any reliable information that evidence of drugs was to be found inside apartment #5. Contrast *United States* v. *Sweeney*, 688 F.2d 1131, 1135, 1137-1138 (7th Cir. 1982) (officer smelled odor of chemical being processed into contraband inside defendant's house while standing at the *open* front door). The limited observations of the police do not preclude at least three other equally plausible explanations for the marihuana smoke in the second floor hallway outside the door of apartment #5: the marihuana smoke had earlier come from either, or both, of the two other apartments on the same floor, or it came from a person passing

through the hallway to exit the building. By failing to verify that there was smoke of burning marihuana inside the apartment, or emerging from it, the police failed to corroborate the information received from CR1, and thus left to speculation whether the source of the smoke was inside apartment #5 or elsewhere.[1]

The absence of independent police corroboration is not cured by combining the information from CR1, which, as we have said, carried no warrant of credibility, with the statements the McCalabs made to the police. The suspicions of the McCalabs concerning activities seen only by them — unlike the independent police corroboration of predictions made by an informant, as in *Draper* v. *United States*, 358 U.S. 307, 309-310 (1959) — do not provide the factual basis required to establish either the general veracity of CR1 or the "specific reliability" of his statement. See *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). Thus, *Aguilar-Spinelli* remains unsatisfied. See *Commonwealth* v. *Upton*, 394 Mass. at 375-376 ("Each prong of the *Anguilar-Spinelli* test — the basis of knowledge and the veracity of the informant — presents an independently important consideration. We have said that independent police corroboration can make up for deficiencies in either or both prongs of the *Aguilar-Spinelli* test. . . . We reiterate today, however, that each element of the test must be separately considered and satisfied or supplemented in some other way"). Close adherence to the tests of *Aguilar-Spinelli* is essential to the preservation of the rights protected by art. 14 of the Declaration of Rights of the Constitution of the Commonwealth, see *Commonwealth* v. *Upton, supra* at 376, and while hypertechnical analysis is to be avoided, *id.* at 374, so too is any analysis which fails to recognize that without satisfaction of those underlying tests, art. 14 itself is put in jeopardy. Compare Note, Constitutional Stare Decisis, 103 Harv. L. Rev. 1344, 1353 n.63

---

[1]The affidavit recites that the police "followed a distinct odor trail of marihuana [smoke] to the door of apartment #5," This is nothing more than an assertion that there was an odor of marihuana smoke *outside* apartment #5, leaving the *source* of that smoke to speculation.

(1990) ("No one would suggest . . . that the text of the fourth amendment clearly determines the existence of probable cause in every stop-and-frisk case. Indeed, in such cases the Court does not reconsider norms announced by the text; instead, it applies the tests it has formulated to vindicate those norms").

In these circumstances, the Commonwealth has not met its burden of producing an affidavit which provides a substantial basis for concluding that there was evidence of criminal activity in apartment #5. *Commonwealth* v. *Stewart*, 358 Mass. 747, 749 (1971). See *Commonwealth* v. *Kaufman*, 381 Mass. 301, 305 (1980) ("here we have an equivocal circumstance distant from any inference that the magistrate could validly make . . ."). Contrast *Commonwealth* v. *Pacheco*, 21 Mass. App. Ct. 565, 566-567 (1985).

Finally, the allegations in the affidavit concerning the three prior arrests of Monterosso for drug activity are no help to the Commonwealth because there was no reliable information in the affidavit which tied the defendant's residence (apartment #5) to past illegal drug transactions. See *Commonwealth* v. *Kaufman*, 381 Mass. at 304 ("Notably absent is reliable specific information from any quarter placing illegal drugs or drug transactions there in the past . . ."); *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 599-601 (1991). Further, the three prior arrests — almost two years before the execution of the warrant — are "too remote in time to give rise to an inference that drugs would be present when the warrant was issued." *Commonwealth* v. *Malone*, 24 Mass. App. Ct. 70, 73 (1987) (fourteen-month hiatus).

For the foregoing reasons, the motion to suppress should have been allowed, and the three judgments (possession with intent to distribute marihuana, cocaine, and LSD) should be reversed, and the verdicts set aside.