COMMONWEALTH vs. OMER S. BRISSON.

No. 90-P-1211.

Worcester. May 17, 1991. - September 27, 1991.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Gaming. Search and Seizure*, Warrant, Forcible entry by police, Motion to suppress. *Due Process of Law*, Vagueness of statute. *Practice, Criminal*, Sentence.

In a criminal case, the record supported the judge's conclusion that police officers properly knocked and announced their presence and purpose before executing a warrant for a search of the defendant's house. [419-422]

The sentencing provisions of G. L. c. 271, §§ 10 and 17, are not contradictory or inconsistent so as to be unconstitutionally vague. [422-423]

INDICTMENTS found and returned in the Superior Court Department on September 16, 1988, and September 18, 1989, respectively.

A pretrial motion to suppress evidence was heard by *William C. O'Neil, Jr.*, J., and the cases were heard by him.

*Thomas J. Butters* for the defendant.

*Elizabeth M. Maunsell*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A Superior Court judge found the defendant, Brisson, guilty of being found in a place with gaming apparatus and conspiracy to register bets on the results of athletic contests, both in violation of G. L. c. 271, § 17. The conviction on the gaming indictment was alleged and proved to be Brisson's second infraction within a five-year period.[1]

---

[1] The judge sentenced Brisson in accordance with G. L. c. 271, § 10, as appearing in St. 1967, c. 189, which provides in pertinent part: "Whoever, within five years after being convicted of any offence mentioned in section . . . seventeen . . . commits the like offence, or any other of the offences therein mentioned, *shall, in addition* to the fine therein provided,

On appeal, Brisson challenges both the denial of his motion to suppress evidence and the constitutionality of the statutory scheme under which he was sentenced. We affirm the convictions.

1. *The motion to suppress.* Before trial, Brisson moved to suppress all items seized during a search of his home pursuant to a warrant. The motion hearing centered on one issue: whether the search of Brisson's house was unlawful because the officers failed to "knock and announce" themselves before entering.[2] Subsidiary findings of fact made by a motion judge, who saw and heard the witnesses, will be accepted, and we will not interject our judgment absent clear error. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980), and cases cited. The evidence before the hearing judge consisted of testimony from each of those present at Brisson's home on the night in question. The facts culled from their testimony and the judge's memorandum of decision are as follows.

At about 6:30 P.M. on December 21, 1987, State Troopers Ronald A. Ford and Heather Crowley, undercover agents in-

---

be punished by imprisonment for *not less than three months nor more than one year*, and the sentence imposing . . . such imprisonment shall not be suspended" (emphasis added). The applicable provision of G. L. c. 271, § 17, as amended through St. 1968, c. 116, is as follows: "Whoever keeps a building or room, or any part thereof, or occupies, or is found in, any place, way, public or private, park or parkway, or any open space, public or private, or any portion thereof, with apparatus, books or any device, for registering bets, or buying or selling pools, upon the result of a trial or contest of skill, speed or endurance of man, beast, bird or machine, or upon the result of a game . . .; or, being the owner, lessee or occupant of a building or room, or part thereof, or private grounds, knowingly permits the same to be used or occupied for any such purpose, or therein keeps, exhibits, uses or employs, or knowingly permits to be therein kept, exhibited, used or employed, any device or apparatus for registering such bets, or for buying or selling such pools, . . . shall be punished by a fine of not more than three thousand dollars or by imprisonment in the state prison for not more than three years, or in jail or the house of correction for not more than two and one half years."

[2]The motion judge was the same judge who convicted Brisson at the jury-waived trial. The warrant did not contain a "no knock" provision, as is generally required for an unannounced entry. See *Commonwealth* v. *Scalise*, 387 Mass. 413, 417 (1982).

vestigating gaming and narcotics activities, met outside Brisson's single family residence in Leominster. FBI Special Agent John E. Kszystyniak, Jr., assisted. Standing on the rear porch, Ford knocked several times on the glass storm door. Brisson, his sister, his wife, her son, a social guest, and the family dog were all inside the house. Having received no response to his knock, Ford glanced into the house and saw no one. He announced "in a very loud voice, . . . 'State police, I have a search warrant, open the door.'"

At this point, we necessarily digress from the officers' undertaking to the simultaneous activity of FBI Special Agent Arthur Ryall. Suspicious that the Brisson gaming operation extended to a second suspect residing in the town of Southbridge, Ryall was listening in on court-ordered wiretaps at both locations. On the day in question, the officers orchestrated the execution of the search warrants at both sites in such a way so as to intercept Brisson as he was transmitting "something of value," see G. L. c. 271, § 17, to the Southbridge suspect. As Ford and the other officers were entering the Brisson residence, Ryall overheard Brisson making an outgoing call, followed by a facsimile transmission. At the motion hearing, Ryall stated that "the first indication I had that Trooper Ford or somebody was inside, was the words 'State police.'" Immediately before the announcement, Ryall heard a dog bark increasingly louder.

We note the barking because none of the occupants, including Brisson, recalled so much as a whimper from the dog. The gist of their testimony was that the officers burst into the house without warning and seized the facsimile machine, facsimile paper sheets, and $3,350 in cash. The motion judge resolved the "curious incident of the dog"[3] in finding that the background noise in the house — which also included a whirring facsimile machine and two running televisions — may have drowned out the hue and cry of the police. The judge concluded that the officers properly knocked and

---

[3]See Doyle, Silver Blaze, The Memoirs of Sherlock Holmes, as compiled in the Complete Adventures of Sherlock Holmes, at 397 (1938).

announced their presence and purpose before executing the warrant.[4]

Brisson suggests that, once he has provided credible testimony that the search warrant was not executed properly, the burden shifts to the Commonwealth to convince the judge that the police knocked and announced or that exigent circumstances spared them the requirement. To buttress this novel position, Brisson attempts an analogy to cases which hold that the Commonwealth has a similar burden of proof in justifying a warrantless entry into a home, see *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 128-129 n.1 (1984), cert. denied, 469 U.S. 1193 (1985), a consent search, see *Commonwealth* v. *Heath*, 12 Mass. App. Ct. 677, 680-681 (1981), or the voluntariness of a confession after a preliminary showing of coercion, see *Commonwealth* v. *Tavares*, 385 Mass. 140, 151-152, cert. denied, 457 U.S. 1137 (1982). In these cases, the Commonwealth shoulders the burden on the narrow ground that warrantless searches and involuntary confessions are presumptively infirm and, thus, unconstitutional. *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). *Commonwealth* v. *Hooks*, 375 Mass. 284, 288 (1978). The "knock and announce" standard, on the other hand, is not constitutionally required. *Commonwealth* v. *Gomes*, 408 Mass. 43, 45 (1990). As such, we see no reason in this case to stray from the general rule that, in disputing the validity of a search pursuant to a warrant, the defendant bears the burden of establishing that the incriminating evidence was illegally obtained. *Commonwealth* v. *Antobenedetto*, 366 Mass. at 56. *Commonwealth* v. *Fudge*, 20 Mass. App. Ct. 382, 385 (1985).[5]

---

[4]The record shows that there were many inconsistencies in the testimony at the motion hearing, and the accuracy of all the witnesses' recollections concerning the police entry was dubious. Brisson's sister's physical limitations became a factor as she was closest to the storm door and could not clearly remember the night.

[5]Other jurisdictions have placed the burden of proof squarely on the defendant in similar circumstances. See, e.g., *United States* v. *Vigo*, 413 F.2d 691, 693 (5th Cir. 1969) ("The warrant stands cloaked with a presumption of validity . . . . The appellant had the burden of proof in challenging the validity of its execution or service"); *United States* v. *Marx*, 635 F.2d

Finally, even if we were to assume that the Commonwealth was charged with the burden of proof, there is nothing in the record to suggest that the judge's conclusions would have been different. The resolution of the conflicting testimony was for the motion judge to determine, see *Commonwealth* v. *Santos*, 402 Mass. 775, 780 (1988), and we choose not to disturb it.

2. *The constitutionality of G. L. c. 271, § 10.* Brisson was convicted of bookmaking under G. L. c. 271, § 17. As proved by the Commonwealth and stipulated to by Brisson, this was his second felony conviction under § 17 within five years. As a result, he fell under G. L. c. 271, § 10, the provision for second or subsequent offenders, which requires that upon a second offense the defendant receive both a prison term and a fine.[6] The trial judge sentenced Brisson under § 10 to three months in a house of correction and imposed a fine of $1,000. Directing our attention to a number of purported "inconsistencies" between the sentencing provisions of

---

436, 441 (5th Cir. 1981) (same); *State* v. *Carangelo*, 151 N.J. Super. 138, 151 (1977); *State* v. *Edwards*, 98 Wis. 2d 367, 376 (1980).

[6]In 1957, a special commission of the Legislature filed a report of its recommendations for legislation concerning organized gambling activities. See Report of the Special Commission Revived and Continued for the Purpose of Investigating Organized Crime and Other Related Matters, Senate No. 700 (1957). The commission concluded that, "whatever the reasons may be, mandatory jail sentences are needed if the anti-lottery laws are to effect the purpose for which they were passed." *Id.* at 179. Acting on this recommendation, the Legislature enacted St. 1957, c. 390, § 1, amending G. L. c. 271, § 10, adding a three-month mandatory house of correction sentence for second offenders. See note 1 *supra*. Since all of the specific gaming offenses enumerated under the cognate statute, G. L. c. 271, § 17, carried only a house of correction penalty, the amendment was consistent with the legislative scheme then in place. Later, in 1968, the Legislature increased the penalties for first offenders under § 17, by enhancing the penalty to punishment "in the state prison for not more than three years, or in jail or the house of correction for not more than two and one-half years." See St. 1968, c. 116. Nothing in that amendment precludes a judge from suspending the sentence without regard to whether a State prison sentence is imposed. As there was no corresponding amendment to § 10, it is conceivable that a first offender could receive a more severe State prison sentence in the event a judge elected not to suspend its execution in whole or in part under G. L. c. 279, § 1.

G. L. c. 271, §§ 10 and 17, Brisson contends that § 10 is unconstitutionally vague. We disagree.

First, Brisson argues that, because § 17 provides for either a fine *or* a prison term, the penalties under § 10 are inconsistent in that they mandate both a fine *and* imprisonment. The two sections are not contradictory; rather, § 10 is an entirely separate provision which only applies to enhance penalties for repeat offenders. The Legislature may make classifications which result in disparate treatment where there is a legitimate objective to punish certain crimes or to enhance punishment for second offenses. See, e.g., *Commonwealth* v. *Jackson*, 369 Mass. 904, 912 (1976) (carrying a firearm); *Commonwealth* v. *Murphy*, 389 Mass. 316, 323-324 (1983) (driving under the influence). Here, there is no fatal ambiguity in the sentencing scheme, only a harsher result for the second-time offender.

Brisson's reliance on *Commonwealth* v. *Gagnon*, 387 Mass. 567 (1982), does not serve his argument. The *Gagnon* court struck down as void for vagueness the penalty clause of G. L. c. 94C, § 32(*a*), finding the statute to be internally inconsistent. The measure for gauging the constitutionality of a sentencing scheme, the court said, is whether the defendant is "required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Id.* at 569, quoting from *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939). Here, the fact that the mandatory prison term under § 10 may not exceed one year, while under § 17 the judge may sentence the first-time offender to a maximum term of three years in the State prison, does not change our result. The statutory scheme under G. L. c. 271, §§ 10 and 17, clearly provides notice as to the potential penalties for violation of each section. Contrast *Gagnon, supra* at 573.[7]

*Judgments affirmed.*

---

[7]Brisson also alleges inconsistency between G. L. c. 271, § 10, and G. L. c. 279, § 1, the statute which affords the trial judge discretion to suspend a sentence when the defendant is given either a prison term or a fine. General Laws c. 279, § 1A, provides for suspension where the sen-

tence comprehends imprisonment *and* a fine; however, the section is clear that the judge has no discretion to suspend the sentence where the conviction is a second felony offense. See also G. L. c. 279, § 11. Because Brisson was a second-time offender, the judge was required under G. L. c. 271, § 10, to sentence him to both imprisonment and a fine. As such, Brisson fell under G. L. c. 279, § 1A, and not G. L. c. 279, § 1. Pursuant to G. L. c. 279, § 1A, the judge could not have suspended the sentence, nor would the defendant have been entitled to the benefits of G. L. c. 276, § 87.