Toomey, J.
INTRODUCTION
The defendant, Luis Acevedo, is charged with unlawful possession of cocaine, unlawful possession of heroin with the intent to distribute, unlawful possession of marijuana and unlawful distribution of drugs within 1000 feet of a school. The charges arose from the seizure of heroin, cocaine and marijuana occasioned by the execution of a search warrant on April 30, 1996.
The defendant filed a motion to suppress evidence seized during the execution of the search warrant. The motion alleged that (1) the affidavit in support of the application for a search warrant failed to establish probable cause necessary to permit the issuance of the warrant; (2) there was no justification on the face of the affidavit to support a no-knock police entrance; and (3) the affidavit did not justify a search of any persons present.
The court heard oral argument on the motion to suppress on May 12, 1997. Upon consideration of that argument and the memoranda submitted by counsel, the defendant’s motion to suppress is DENIED.
BACKGROUND THE WARRANT
On April 25, 1996, a search warrant issued directing the police to search the third floor left apartment located at 746 Lakeview Ave. in Lowell, MA. The warrant also authorized the police to conduct their search at any time of the day or evening, to make an unannounced entrance and to search “any person present. . .” The warrant sought the seizure of heroin, a controlled substance as defined in M.G.L. 94C, along with drug-related paraphernalia. The warrant was based upon an affidavit, of the same date, containing information about activity at the location.
*129 The factual allegations contained in the affidavit may be summarized as follows:
1. For two weeks prior to the application for the warrant, the police received anonymous calls from “concerned citizens” who reported that a Spanish male was selling drugs from the apartment location in question.
2. Two days prior to the application, the police received information from a “confidential informant” (CI-1) who stated that “it knew of a Spanish male who delivers large amounts of heroin.” CI-1 described the location of the same apartment and supplied the Spanish male’s phone number. The informant had previously supplied information to the police which proved to be reliable.
3. “Within the past week,” another informant (CI-D) met with police and provided information, based on the informant’s personal observations, of several heroin purchases within the past seventy-two hours and within the past two weeks originating from the same location. CI-D asserted that the same telephone number as Cl-1 had recited would trigger a narcotic transaction. CI-D also supplied additional details such as the Spanish male’s name, “Tony,” and the details of the narcotics transactions. The Spanish male would direct the caller to meet him “at the Gulf gas station, by the payphone or the rear parking lot of Tony’s sub shop.” CI-D stated that he saw the Spanish male walk to and from the apartment during the transactions.
4. Within the “past two weeks” police observations corroborated the activity described by the two confidential informants and concerned citizens.
5. During the “past seventy-two hours" police conducted a “controlled buy,” enlisting the aid of CI-D who was searched for drugs and U.S. currency by police both before and after the transaction. Police observed “a [S]panish male walk out the rear door of 746 Lakeview Ave., third floor left apartment,” and witnessed his arrival at a nearby location to conduct the drug transaction in which CI-D received two heat sealed packages of heroin in exchange for U.S. currency.
6. An unannounced entrance was requested of the issuing magistrate because police observations confirmed that the apartment in question is accessible only from the rear of the building and “affords the subjects maximum visibility of approaching police,” that the drug related activity is conducted “at all hours of the day and night,” and that it is located in “an area which has been the scene of numerous arrests for narcotics related offences.”
7. A search of all persons present was requested of the issuing magistrate for safety reasons due to the propensity for “persons involved in illegal narcotics activity” to “possess weapons including firearms.”
THE EXECUTION
On April 30, 1996, Lowell police officers entered the apartment and conducted a search pursuant to the warrant which resulted in the seizure of a quantity of controlled substances, currency and drug-related paraphernalia. Upon entry, the officers observed the defendant and four others in the kitchen area. In plain view were several heat sealed, clear plastic packets containing a white powdery substance which the police believed to be heroin. The defendant grabbed the packets and fled to a nearby bedroom and several packets fell from his person. All five occupants were placed in custody. The police seized seventy-three packets of heroin from the scene. From defendant’s person they seized two hundred and forty dollars in United States currency, a clear plastic bag containing cocaine and two marijuana cigarettes. Other drug paraphernalia items, indicative of drug distribution, were also seized.
DISCUSSION
I. PROBABLE CAUSE FOR SEARCH
The defendant has challenged the sufficiency of the information contained in the affidavit to permit the magistrate to make the probable cause determination necessary to support the issuance of the warrant. Probable cause is comprised of facts and circumstances within the police officer’s knowledge that would warrant a reasonable person in concluding that a crime has been committed or that specific items related to criminal activity will be found at a particular place. Commonwealth v. Spano, 414 Mass. 178, 184 (1993). Probable cause is the product of probabilities, not absolutes. The principal issue in any probable cause analysis is whether the magistrate had a “substantial basis on which to conclude that the articles or activity described [was] probably present or occurring at the place to be searched.” Commonwealth v. Upton, 394 Mass. 363, 370 (1985). The Upton case reflects Massachusetts’ adoption of the Agwlar-Spinellitest requiring an affiant to provide information about the confidential informant which independently satisfies a two prong scrutiny, to wit, (1) the informant’s basis of knowledge and (2) the informant’s reliability or veracity. Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964).[1]
The information contained within the four corners of the affidavit must establish probable cause for the search of the apartment. “Probable cause" sufficient to support the issuance of a search warrant is “something more than mere suspicion, but something less than evidence sufficient to warrant conviction.” Commonwealth v. Baharoian, 25 Mass App. Ct. 35, 37 (1987), review denied 401 Mass. 1103 (1987). The issuing magistrate may rely on the information expressly recited within the affidavit or that which may be reasonably inferred from the affidavit. Id. at 37. The information garnered from the affidavit must be interpreted not as though one were surgically parsing a legal document, but in an “ordinary, common-sense manner without hypertechnical analysis.” Commonwealth v. DeLaCruz, 1995 WL 463142, 1, 2 (1995). See also, Commonwealth v. McRae, 31 Mass.App.Ct. 559, 560 (1991); Commonwealth v. Wright, 15 Mass.App.Ct. 245, 248 (1983).
*130 At bar, any arguable deficiency in the Aguilar-Spinelli requirements of source of knowledge and reliability is rescued by recitation of the circumstances of the “controlled buy.” That “buy” supplements or supplies the information required by either or both prongs of the test. Commonwealth v. Warren, 418 Mass. 86, 89 (1994); Commonwealth v. Luna, 410 Mass. 131, 134 (1991); Commonwealth v. Collado, 42 Mass.App.Ct. 464, 469 (1997) (drug case where independent police corroboration satisfied Aguilar-Spinelli tests for overall reliability); Commonwealth v. Villella, 39 Mass.App.Ct. 426, 427 (1995).[2] In sum, the admittedly sparse information provided by CI-1, when joined with the more detailed information and “controlled buy” of CI-D and the corroboration by independent police observations, enabled the affidavit to satisfy the source of knowledge and reliability prongs of Aguilar-Spinelli. Commonwealth v. Montanez, 410 Mass. 290 (1991); Commonwealth v. Parapar, 404 Mass 319 (1989).[3]
II. NO-KNOCK ENTRY
Defendant next argues that the affidavit provided no justification for the magistrate to authorize a no-knock entry. In general, a no-knock entry is permitted if there is some information in the affidavit which would allow the magistrate to conclude that the items sought by the warrant might probably be destroyed upon police announcement. Commonwealth v. Rodriquez, 415 Mass. 447, 450 (1993); Commonwealth v. Scalise, 387 Mass. 413, 421 (1982).[4] And, even if there is a violation of the common law rule that police must first knock and then enter the area to be searched, such a violation does not automatically lead to the suppression of evidence. Commonwealth v. Gomes, 408 Mass. 43, 46 (1990); Commonwealth v. Brisson, 31 Mass.App.Ct. 418, 421 (1991) (defendant has the burden of proof to show a violation of the rule).
There are exceptions to the general knock-and-announce requirement. If the police have reason to fear for their own safety or that of others as a result of an announced entry, or if the announced entry of the police would facilitate the destruction of evidence or the suspect’s escape,- a no-knock entry may be permitted. At bar, the physical location of the apartment, with accessibility only from the rear, allowed the apartment occupants readily to discern approaching police. That locus, and its suggestion of a need to inhibit the ability of the occupants to destroy evidence or otherwise elude police efforts, provided sufficient justification for a no-knock entrance. Commonwealth v. Benlien, 27 Mass.App.Ct. 834 (1989).
The United States Supreme Court has recently recognized that the Fourth Amendment to the United States Constitution precludes the police from unrestricted use of intrusive no-knock entrances, even in controlled substance cases, where such liberties have not been requested or justified within the affidavit. The Court asserted that, “(t]he Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement for felony drug investigations ... A ‘no-knock’ entry is justified when the police have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime.” Richards v. Wisconsin, U.S., 117 S. Ct. 1416, 1417 (1997). In the instant case, the affidavit supported the police request for the no-knock entrance because the affidavit plainly demonstrated the probability that the suspects might flee and that the evidence might be destroyed should the police be required to knock and announce their presence.[5]
III. ALL PERSONS PRESENT SEARCH
Defendant also argues that the affidavit was insufficient to provide justification for a search of “any person present.” Generally, a warrant which allows a blanket search of “any person present” must be justified by special circumstances which warrant such liberties. The permission so to search is not readily granted because of its potential for diminution of Fourth Amendment rights. The seminal case is Ybarra v. Illinois, 444 U.S. 85, 91 (1979), where a frisk of bar patrons was held invalid when the warrant directed officers to search a tavern and its bartender. Proximity alone is not enough to justify a search of all persons in a public area. Commonwealth v. Sampson, 20 Mass.App.Ct. 970, 971 (1985).
Review of the validity of an “any person present” search warrant requires a factual inquiry. Commonwealth v. Souza, 42 Mass.App.Ct. 186 (1997). The Massachusetts test for the validity of such a warrant was established in Commonwealth v. Smith, 370 Mass 335, 348 (1976). There, although the defendant was not described with particularity, the court upheld an affidavit which sufficiently established probable cause to believe that any person in the apartment was a participant in the illegal drug transactions occurring at that location. Id. at 339. Factors such as the difficulty of describing the person to be searched, the unlikelihood that an innocent person would be searched, the specific nature of the illegal activity, the time of day during which the search is to occur and “the character of the premises ... its location, size, the particular area to be searched, means of access, neighborhood, its public or private character ...” are all relevant to the inquiry. Id. at 345.
In Souza, a forty-three year old adult male was successful in having his drug possession conviction overturned because he happened to walk into an apartment being searched under a warrant which was aimed at breaking up drug transactions by teenagers and which permitted a search of all persons present although it was not requested in the affidavit. See also, Baharoian, 25 Mass.App.Ct. at 38, 40 (in a small, local store it was not reasonable to anticipate that everyone present was involved in illegal gambling).
The instant case differs from Ybarra, Souza and Baharoian, all of which disapproved of general *131 searches, in that it involves a small residential apartment, where repeated drug transactions were reliably alleged to have occurred. The likelihood that the apartment at bar contained innocent bystanders, as might be the case in a public location, is greatly diminished in a private apartment where drug activity has been observed to be taking place around the clock. There was a reasonable basis to believe that anyone present in the instant apartment was involved in the illegal drug sale transactions. Cf. Baharoian, 25 Mass.App.Ct. at 39 (“. . . it was simply not reasonable to suppose that anyone on the scene would have arrived by accident and been unaware unlawful business was going on”). The application at hand appropriately requested the “any person present” authorization because its affidavit demonstrated the probability that any person present might reasonably be expected to have been involved in the ongoing illegal activity.
CONCLUSION
The issuing magistrate was offered ample reason, within the four corners of the affidavit, to conclude that controlled substances were probably unlawfully located within the apartment, that a no-knock authorization was justified and that any person present would likely have involvement with illegal drug transactions. Consequently, the items obtained pursuant to the execution of the warrant may be used as evidence. The defendant’s motion to suppress the evidence thus obtained will be DENIED.
ORDER
Based upon the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress evidence be DENIED.

 In Upton, the Massachusetts Supreme Judicial Court gave more weight to individual rights by retaining, for Massachusetts constitutional purposes, the Aguilar-Spinelli standard of two independent prongs even after that test was abandoned by the United States Supreme Court in favor of the more flexible “totality of the circumstances” approach of Illinois v. Gates, 462 U.S. 213 (1983) (a weakness in one prong may be supported by a strength in another).

 The defendant cites Reddington to challenge the affidavit’s lack of specificity. Commonwealth v. Reddington, 395 Mass. 315 (1985). Reddington, however, can be distinguished from the case at bar because, in Reddington, there was no controlled buy and because Reddington involved an anonymous informant who did not personally know of the drug transactions, but had heard about them from others.

 The contributions made by the unidentified “concerned citizens" are not subjected to Aguilar-Spinelli testing for overall reliability and accuracy because they do not merit the same level of skepticism as information received from an unidentified police informant. The magistrate should minimally, however, be given the name of the “citizen” because information from unidentified citizens is insufficient to establish probable cause. Commonwealth v. Rojas, 403 Mass. 483 (1988). Accordingly, the information from the anonymous “citizens” in the present affidavit do not contribute to the instant conclusion of probable cause.

 Nile defendant also cites Scalise in support of his theory that police should have re-evaluated the need for an unannounced entrance at the scene. Yet there is no evidence at bar of any changed circumstance which might have led the police to believe that evidence would not be destroyed or that the occupants would not attempt flight. In Scalise, the Supreme Judicial Court held that the magistrate was justified in permitting the no-knock entrance in a case where illicit drugs were kept in relatively small packets which were easily disposable.

 The law places the burden of proof upon the defendant to adduce evidence of a violation of the knock-and announce rule. Commonwealth v. Brisson, 31 Mass.App.Ct. 418, 421 (1991). There is no evidence on this record that police failed to knock and announce. Accordingly, for aught that appears at bar, the officers may well have knocked and announced, notwithstanding the warrant’s excusing them from that obligation. Therefore, there is additional reason to reject the defendant’s “no-knock” arguments offered in support of suppression.